# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF OKLAHOMA

ANDREW BEISSEL, an individual, J&B
Enterprises, Inc., a Colorado Corporation,
individually and on behalf of all others
similarly situated,

      Plaintiffs,

vs.

WESTERN FLYER EXPRESS, LLC, an
Oklahoma Limited Liability Company,

      Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. CIV-21-903-R

**AMENDED CLASS ACTION
COMPLAINT**

**JURY TRIAL DEMANDED**

## INTRODUCTION

1.    This class action lawsuit is brought against trucking company Western Flyer Express, LLC ("Western Flyer"), and arises out of its "lease-purchase" business opportunity program (the "Driving Opportunity") whereby certain of its truck drivers ("Drivers") leased trucks from Western Flyer's affiliate, R.W. Timms Leasing, LLC ("Timms Leasing") and simultaneously contracted with Western Flyer to provide it driving services. Drivers are licensed commercial drivers responsible for safely operating a commercial vehicle and transporting Western Flyer's customers' cargo.

2.    Plaintiff Andrew Beissel and his closely held corporation Plaintiff J&B Enterprises (hereinafter, collectively referred to as "Beissel") and the members of the putative Class (Drivers) are current and former Drivers who entered both an "Independent Contractor Agreement" or similarly styled agreement with Western Flyer and a "Vehicle Lease Agreement" or similarly styled agreement with Timms Leasing.

3.     When selling the Driving Opportunity to Drivers, Western Flyer made uniform factual misrepresentations and failed to disclose material facts about the economics of the Driving Opportunity, the income, and the miles the Driving Opportunity did and would provide in order to induce Drivers to purchase the Driving Opportunity. Western Flyer thus defrauded the Drivers into paying for the bulk of the expenses of transporting goods for Western Flyer's customers including such items as truck rental payments, gas, maintenance, computers, a variable mileage payment, and other expenses associated with the Driving Opportunity. After paying such expenses, the Drivers often had little or no compensation or sometimes even owed Western Flyer money despite the long hours they worked as Drivers.

4.     In connection with the offer and sale of the Driving Opportunity, Western Flyer has (1) violated the Oklahoma Consumer Protection Act (OCPA), 15 Okl. St. §§ 751, et seq., (2) violated the Oklahoma Deceptive Trade Practices Act (ODTPA), 78 Okl. St. §§ 51 et seq., (3) committed common law fraud and misrepresentation, and (4) acted negligently in causing injury to Drivers.

5.     Beissel was a Driver from approximately November 2019 to December 2019. Beissel seeks to certify an appropriate class action under Rule 23 of the Federal Rules of Civil Procedure that will assert claims under laws of the Oklahoma.

6.     Beissel seeks damages, declaratory, equitable, and injunctive relief, as well as available attorneys' fees and costs on behalf of himself and the Drivers.

**JURISDICTION AND VENUE**

7.      This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2)(A), because the aggregated claims of the putative class members exceed the sum value of $5,000,000, exclusive of interests and costs, and this is a class action in which at least one member of the putative Class, on the one hand, and Defendant, on the other, are citizens of different states.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), inasmuch as Western Flyer has its headquarters and offices, conduct business, and can be found in the District, and the causes of action set forth herein have arisen and occurred in part in the District. Venue is further proper under 29 U.S.C. § 1132(e)(2) because Western Flyer have substantial business contacts within the state of Oklahoma and in this District.

9.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.  A substantial part of the events or omissions giving rise to Beissel's claims occurred in this judicial district.  Finally, venue is appropriate in this district because agreements between Western Flyer and all Drivers provide for all disputes to be litigated in Oklahoma County state or federal courts.

**PARTIES**

10.      Plaintiff Andrew Beissel is a resident of the State of Ohio.

11.      Plaintiff J&B Enterprises is a Colorado corporation solely owned by Andrew Beissel.

3

12.    Beissel performed work as a Driver for Western Flyer from approximately November 2019 to December 2019.  Beissel regularly engaged in Western Flyer's business in various locations, including within this judicial district.

13.    Beissel is informed, believes, and thereon alleges that Western Flyer is an Oklahoma limited liability company with its principal place of business in Oklahoma City, Oklahoma.  During the relevant time period, Western Flyer was and is engaged in business throughout the United States, including in Oklahoma.  Western Flyer's primary business consists of providing transportation services to various clients.

## GENERAL ALLEGATIONS

14.    Beissel incorporates by reference the allegations set forth above.

15.    During the time period relevant to this action, Western Flyer has employed Drivers to provide long haul delivery services to Western Flyer's customers.  Drivers work regular schedules for Western Flyer, often 6-7 days per week, and 11-14 hours per day, in order to meet Western Flyer's service and stand-by demands. As a result, it is impracticable for Drivers to take on any other employment outside of Western Flyer.

16.    In order to induce Drivers to purchase the Driving Opportunity, Western Flyer, from its headquarters in Oklahoma, directed and implemented a multi-pronged fraudulent scheme.  Phase 1 of the scheme was a false and misleading advertising campaign that was run across multiple on-line platforms and through various in-house and third-party recruiters.  The goal of Phase 1 was to get Drivers to come to Western Flyer's facility in Oklahoma for "orientation" classroom proceedings (Phase 2 of the scheme) and once there, every Driver was subjected in person to further uniform false and misleading

representations and omissions that culminated in the Driver purchasing the Driving Opportunity.

17.     Phase 1 of the scheme involved literally hundreds if not thousands of essentially identical advertisements placed via online job boards, social media posts platforms such as Twitter and Instagram, and on Western Flyer's own website.

18.     An exemplar compendium of just some of Western Flyer's false and misleading online advertisements is found in Exhibit A noting in pertinent part:

 a. Exhibit A pp:1-2:

- If you are searching for a Regional lane that provides the miles you need and the home-time you want! Then this is it! This lane is available to Contractors and Company drivers.

- Western Flyer Xpress offers one of the best lease purchase programs in the industry!! Most carriers have a fixed weekly truck expense. At WFX, you pay a small weekly rate ($145) and then an additional $0.21 per mile. So, if you ever take a week off, or have a breakdown you WILL NOT go deep into the hole. That coupled with a true bumper-to-bumper warranty (includes tires and oil changes) you have one of the best LP programs that puts you in position to be successful!

- Average Miles/Week 2,700-3,000

- Average Length of Haul 800 miles (full turn)

- Average Weekly Pay $1115.00-$1300.00

    b.   Exhibit A p. 3:

- LEASE PURCHASE!

- This is one of the most affordable lease purchase programs in the industry.

- Lease Purchase / $1.00 Buyout / No Money Down & No Credit Check!

- W900, Pete 389's, Kenworths and Freightliners!

- Earn up to $1,800+ per week take home

- Own your own truck in just 24 months!

- Fast approval -Apply today get approved tomorrow!

    c.   Exhibit A p. 4:

- Western Flyer Express Tupelo, MS

- Job Contractor - Driver

- Higher Pay and Strong miles

- If you have reefer experience, then this is an amazing opportunity for you!

- Special Lease Purchase Option for Contractors 2019 W900s 565 Cummins 18 speed Manual Premier interior that includes built in Nav and Free satellite TV with 24" screens TV's with DVR'S. Studio sleeper.

- Lease is 84 months 750,000 miles buy out $1.00!

- Average Miles/Week 2,700 - 3,000

- Average Length of Haul 950 miles

d.  Exhibit A p. 5:

- Western Flyer Express Reno, NV

- $1,300-$1,800+ Take Home Pay!

- Weekly Miles 2,700-3,400 & Great Benefits!

- All of our leases come with a bumper to bumper warranty including oil changes and tires!

- This is one of the most affordable lease purchase programs in the industry.

- Plus, earn $1.02-$1.22 per mile on ALL miles both loaded and empty.

- Exceptionally Strong Miles

19.    A compendium of just some of Western Flyer's false and misleading Instagram advertisements is found in Exhibit B noting in pertinent part:

a.  Exhibit B p. 1:

- Join Western Flyer Xpress today!

- We offer maximum miles, the best LP program in the industry, and an experienced team that makes YOU successful!

- Don't miss this opportunity.! Call Recruiting @ 833-DRV-4WFX.

b.   Exhibit B p. 2:

- WFX's proven formula of great equipment, solid fleet managers, and plenty of miles is what makes our drivers and contractors successful.

c.   Exhibit B p. 3:

- Many career CDL drivers consider moving into owner-operator an unattainable goal. We can help get you there. WFX offers the best lease-purchase on the road, with experienced fleet managers and plenty of miles - check out what we have to offer!

d.   Exhibit B p. 4:

- Looking for an opportunity to lease-purchase superior equipment, with plenty of miles? We get it! Come see if WFX has the truck for you!

e.   Exhibit B p. 5:

- It's a great time to lease a truck and get started on your way to ownership. We've got the freight and equipment you're looking for - are you ready?

f.   Exhibit B p. 6:

- Looking for a great career in trucking? Check out our lease program, it might be right for you!

g.  Exhibit B p. 6:

- Ready to own this beautiful 2019 Freightliner Cascadia? We have a new lease-to-own program that might be right for you! $0 down, $1.00 buyout. Available Now.

20.  A compendium of just some of Western Flyer's false and misleading Twitter advertisements is found in Exhibit C noting in pertinent part:

a.  Exhibit C p. 1:

- Join Western Flyer Xpress today! We offer maximum miles, the best LP program in the industry, and an experienced team that makes YOU successful! Don't miss this opportunity!

b.  Exhibit C p. 1:

- WFX's proven formula of great equipment, solid fleet managers, and plenty of miles is what makes our drivers and contractors successful.

c.  Exhibit C p. 1:

- We have solid equipment, plenty of miles, and seasoned fleet managers to keep you rolling!

d.  Exhibit C p. 1:

- If you are ready for Outstanding Equipment, Seasoned Fleet Managers and Plenty of Miles, come join a fleet you can count on with WFX!

e.   Exhibit C p. 5:

- Ready for the next step in your trucking career?  WFX has one of the best lease-purchase programs on the road. Join the fleet with the best equipment today!

f.  Exhibit C p. 5:

- Looking for superior equipment, all the miles you can run, great lease-to-own deal? We might have a match for you ....

21.    Western Flyer also used its own website to secure Drivers' commitment to go to Oklahoma for orientation and purchase the Driving Opportunity  An example of such false and misleading website is found in Exhibit D noting in pertinent part with respect to recruiting team drivers:

- CDL CLASS A OTR DRIVER'S NEEDED!

- DRIVE FOR WESTERN FLYER XPRESS

- Western Flyer Xpress offers one of the best lease purchase programs in the industry!! Most carriers have a fixed weekly truck expense. At WFX, you pay a small weekly rate ($145) and then an additional $0.23 per mile. So, if you ever take a week off, or have a breakdown you WILL NOT go deep into the hole. That coupled with a true bumper-to-bumper warranty (includes tires and oil changes) you have one of the best LP programs that puts you in position to be successful!

- Average Length of Haul: 1050-1200 miles

- Average Miles per Week: 6000+

22.    Western Flyer also hired in house and third-party recruiters as agents to secure Drivers' commitment to go to Oklahoma for its orientation.  Western Flyer provided these recruiters with scripted uniform false and misleading information with the intention that the recruiters would communicate such information to driver candidates in order to induce them to go to orientation and ultimately to purchase the Driving Opportunity.  For example, Beissel was recruited by a firm called Right Turn Recruiting who emailed him a flyer with Western Flyer's logo containing false and misleading information about the Driving Opportunity.  Exhibit E is a copy of the flyer Right Turn emailed Beissel and provides in pertinent part:

- Here is the info we spoke of on the Lease Purchase.

- Did you know WFX bumper to bumper warranty covers absolutely everything on your truck, even your tires and oil changes? You are never out of pocket a dime!

- Drivers are averaging lots of miles, running beautiful lanes.

- About the Lease Purchase:

- Take your pick we generally have 2016-2019 and newer Freightliner Cascadias ~ $1. 00 Buyout at the end of the lease, don't want to own it? That's okay swap it in for a newer one!!

11

- Drivers will earn 1.02 - $1.012 per mile dry van, and 1.12-1.17 per mile reefer, $1.24 for Flatbed PLUS 100% of the Fuel Surcharge, on all miles Loaded, Empty or Bobtailing.

- Lots of miles!! Expect to run on average 2800-3300 miles a week, run harder get more, they have all the miles you want!

- Average length of haul is 850 miles, lots of drop and hooks, and lots of relays!! We keep you moving!!

- Walk away lease, YOU HAVE NOTHING TO LOSE!

23.    Right Turn Recruiting also emailed Beissel a sampling of positive settlements statements from three Drivers that were purportedly representative of what Beissel and other Drivers could expect if they purchased the Western Flyer Driving Opportunity.  Exhibit F is a copy of the settlement statements emailed Beissel and they show 1) driver 2764C driving 3,189, 3,892, and 2,436 loaded miles with respective net weekly incomes of $1,659.97, $2,120.04, and $1,346.80; 2) driver 5545C driving 2,957, 3,535, and 2,166 loaded miles with respective net weekly incomes of $1,873.91, $2,040.57, and $1,466.51; and 3) driver 5132C driving 2,712, 3,027, and 2,745 loaded miles with respective net weekly incomes of $1,787.72, $1,840.41, and $1,451.93.

24.    The above and similar advertisements, recruiting pitches, and cherry-picked settlement statements were false and misleading.  The truth was and is that the advertised Driving Opportunity did not provide a viable career, a "proven formula," or any manner of sustainable economic opportunity. The touted average mileage, income, and length of haul figures in the ads and pitches were simply false and misleading factual representations and

Western Flyer knew so at the time it or its agents made them. The settlement statements were cherry-picked and unrepresentative of what Drivers could expect on a sustained basis. Indeed, Drivers that had purchased the Driving Opportunity achieved nothing close to these representations on a sustained basis. Finally, the $1.00 lease buy-out claims were misleading because few, if any, persons lasted long enough with Western Flyer to secure the buy-out.

25.    With the hook set by false and misleading information in Phase 1, Beissel and all other Drivers relied on the same and travelled to and attended classroom orientation sessions at Western Flyer's facility in Oklahoma. Western Flyer conducts and has conducted during the class period orientation classes at its Oklahoma facility on a weekly basis with at least one and perhaps two or more groups of Drivers beginning each week. Beissel's orientation began on Monday November 11, 2019.

26.    It was here, while Drivers were physically present in Oklahoma at Western Flyer's premises, that Western Flyer subjected all Drivers to uniform and scripted presentations touting the benefits of the Driving Opportunity utilizing false and misleading information while at the same time Western Flyer concealed important material facts.

27.    Western Flyer's orientation proceedings were conducted by its full-time employees and consisted of uniform scripted presentations that included oral and written representations that the Driving Opportunity would provide Drivers with a career and income. The orientation Beissel attended between November 11 and 13, 2019, had a group of about 24 Driver in attendance. At this and other orientations, Western Flyer orientation leaders put the same settlement statements found in Exhibit F up on a screen in PowerPoint

format for all to see along with accompanying explanation that Drivers purchasing the Driving Opportunity could expect the same results.

28.    At this and other orientations, Western Flyer personnel also physically provided each Driver with a written proforma of what he/she could expect to earn from the Driving Opportunity and put the proforma up on a PowerPoint screen for a presentation that described the mileage and income scenarios as representative of Drivers could expect with the Driving Opportunity. The proforma Western Flyer presented to with Beissel and other Drivers in November 2019 is attached as Exhibit G. Consistent with the advertisements, recruiter representations, and driver settlement statements of miles averaging from 2800-3200 noted above, the proforma presented three weekly mileage scenarios at precisely 2,800, 3,000, and 3,200 and showed that Drivers would achieve net weekly earnings of $1,577.70, $1,712.41, and $1,847.11, respectively. These representations were entirely false and misleading and unrepresentative of the true experience of Drivers that had purchased the Driving Opportunity, which was far less in terms of sustained or average mileage and income.

29.    In another fraudulent and misleading "dog and pony show" tactic applied to all Drivers at all orientations, Western Flyer senior leadership would come in the classroom and tout the advantages the $1 lease buy-out at which time they would give a $1 bill to each Driver while making the statements that Western Flyer looked forward to getting that dollar back and turning over title of the truck to the Drivers. At Beissel's orientation in November 2019, it was Western Flyer's president Randy Timms that appeared in class and

14

handed the $1 out to all Drivers present while personally touting the $1 buy-out as a great deal and opportunity for the Drivers.

30.     The above Western Flyer uniform pitches and materials distributed in orientation to every Driver were false and misleading.  The truth was and is that the advertised Driving Opportunity did not provide a viable career or a sustainable economic opportunity. The touted mileage, income, and expense figures were false and misleading and Western Flyer knew so at the time it made them.  Western Flyer knew but concealed that Drivers that had purchased the Driving Opportunity achieved nothing close to these representations on a sustained basis if ever.

31.     Western Flyer also knew but concealed that most Drivers purchasing the Driving Opportunity failed within months because Drivers could not make enough money in order to perpetuate its fraud scheme.   Indeed, Western Flyer knew but concealed that Driver turnover was over 100% annually and that no significant portion of those that had purchased the Driver Opportunity had made a "career" of driving for Western Flyer making the representations noted above and elsewhere, false and misleading.  Similarly, the $1.00 lease buy-out claims were misleading because few, if any, persons achieved the buy-out and Western Flyer knew but concealed this fact from all Drivers.

32.     Western Flyer engaged in the fraudulent scheme described above to induce Drivers into purchasing the Driving Opportunity.  Drivers in fact relied upon Western Flyer's misrepresentations and omissions and each Driver did purchase the Driving Opportunity while physically present in Oklahoma.  Had Beissel and the other Drivers known the truth, they would not have purchased the Driving Opportunity.

33.     In sum, Western Flyer concealed that the entire Driving Opportunity was a fraudulent scheme designed to bilk the Drivers out of their labor and to have the Drivers pay the Western Flyer's unreasonable expenses associated with transporting goods. Western Flyer's motives in perpetuating the scheme were to cut its expenses, to increase its margin on the money it makes selling transportation services, and increase its ability to sell transportation services by pricing below competitor trucking companies that pay drivers and expenses in a lawful fashion.

## CLASS ACTION ALLEGATIONS UNDER FED. R. CIV. P. 23

34.     First, Beissel seeks to maintain his Oklahoma state law claims as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.  In particular, Beissel seeks to certify the following Rule 23 Class:

> All current and former Drivers who entered into a "Independent Contractor Agreement" or similarly styled agreement  with Western Flyer and a "Vehicle Lease Agreement" or similarly styled agreement with Timms Leasing (and/or its predecessor or successor, if any) to provide transportation services for Western Flyer within the United States at any time during the period beginning three years prior to the filing of this Complaint, and continuing through the resolution of this action.

35.     Beissel seeks to serve as a Class Representative for the above-defined Class.

36.     Beissel's Oklahoma state law claims have been brought and may properly be maintained as a class action under Rule 23 because there is a well-defined community of interest in the litigation and the putative Class is easily ascertainable.

37.     Numerosity:  The potential members of the Class are believed to exceed 700, and the Class Members are so numerous that joinder of all members is impracticable.

38.    Commonality:  There are questions of law and fact common to Beissel and the Class that predominate over any questions affecting only individual members of the Class.  Examples of these common questions of law and fact include, without limitation:

a.  Whether Western Flyer violated the OCPA,  the ODTPA, and/or the common law by misrepresenting 1) that Drivers purchasing the Driving Opportunity would have a career opportunity, 2) that the Driving Opportunity would provide a sustained and viable economic opportunity, 3) the amount of income for Drivers, 4) the average miles for Drivers; and 5) the amount of miles Drivers would drive and income they would earn and/or by concealing material facts including the high turnover and failure rates of Drivers, the low average income of Drivers, and the low average driving miles Western Flyer provided to Drivers;

b.  Whether Western Flyer engaged in fraud and constructive fraud concealment and/or otherwise breached a duty of disclosure by misrepresenting income Drivers would earn, misrepresenting miles Drivers would get, misrepresenting the average length of haul, and concealing material facts including the high turnover and failure rates of Drivers, the low average income of Drivers, and the low average miles Western Flyer provided to Drivers; and

c.  Whether Western Flyer is liable to Beissel and the Drivers under a negligence pers se claim for relief for violations of applicable statutory

and regulatory violations that prohibit fraud and deceptive act in the sale of business opportunities; and

d.  The proper formula and methodology for calculating restitution, damages and penalties owed to Beissel and the Class as alleged herein.

39.    Typicality:  Beissel's claims are typical of the claims of the Class.  Western Flyer's common course of unlawful conduct as alleged herein has caused Beissel and Class members to sustain the same or similar injuries and damages.  Beissel's allegations – both legal and factual – are thereby representative of and co-extensive with the claims of the Class.

40.    Adequacy:  Beissel does not have any conflicts of interest with members of the Class he seeks to represent, and Beissel will prosecute this case vigorously on behalf of the putative Class members.  Beissel's Counsel are competent and experienced in litigating consumer and complex commercial class actions.  Beissel will fairly and adequately represent and protect the interests of the Class he seeks to represent.

41.    Superiority of Class Action:  A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Individual joinder of all Class members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual Class members.  Each Class member has been damaged and is entitled to recovery by reason of Western Flyer's illegal practices and violations of law stated in this complaint.  Class treatment will allow those similarly situated persons to litigate their claims in the manner most efficient and economical for the Parties and the judicial system.

42.    Beissel knows of no difficulty that would be encountered in the management of this litigation that would preclude its maintenance as a class action.

## FIRST CLAIM FOR RELIEF
### Deceptive and Unfair Trade Practices
### Oklahoma Consumer Protection Act, 15 Okl. St. §§ 751, *et seq.*

43.    Beissel re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

44.    The Oklahoma Consumer Protection Act (OCPA), 15 Okl. St. §§ 751, et seq. bars deceptive and unfair trade practices in connection with "the advertising, offering for sale or purchase, sale, purchase, or distribution of any services or any property, tangible or intangible, real, personal, or mixed, or any other article, commodity, or thing of value wherever located, for purposes that are personal, household, or business oriented."

45.    "Deceptive trade practice" means a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person. Such a practice may occur before, during or after a consumer transaction is entered into and may be written or oral." Okla. Stat. tit. 15, § 752 (13).

46.    "Unfair trade practice" means any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." Okla. Stat. tit. 15, § 752 (14).

47.    It is thus unlawful for sellers of business opportunities such Western Flyer's sale of the Driving Opportunity to engage in the sale of such opportunity utilizing false and/or misleading information and/or by omissions of material facts.

48.    Western Flyer's conduct towards the Drivers as described above in paragraphs 13-29 constitute both deceptive and unfair trade practices in derogation of 15 Okl. St. §§ 751, et seq. The above representations in the proformas and advertising were false and misleading, and Western Flyer knew it at the time and/or made the false representations recklessly. Moreover, Western Flyer concealed the true material facts that: 1) the true average mileage and income numbers were far below what Western Flyer had represented, 2) that the Driving Opportunity would not and did not offer Beissel and other Drivers a sustained viable economic opportunity, 3) that Drivers purchasing the Driving Opportunity could expect and often had very low and/or negative weekly paychecks and very low income, and 4) that Drivers purchasing the Driving Opportunity had and could expect a high failure and turnover rate.

49.    These undisclosed facts were known only to Western Flyer and not within the reasonable attention and observation of Beissel and other Drivers that purchased the Driving Opportunity.

50.    The Western Flyer concealed these facts in order to sell the Driving Opportunity to Beissel and other Drivers who in turn relied on such omissions when purchasing the Driving Opportunity. Finally, Beissel and other Drivers were damaged by Western Flyer's fraudulent concealment of material facts in that they purchased the Driving Opportunity and expended labor and suffered financially therefrom.

51.    For the foregoing reasons, Western Flyer was and is in violation of 15 Okl. St. §§ 751, et seq including but limited to 15 Okl. St. § 753 (5), (8), and (20) as to Beissel and the putative Class.

52.     Pursuant to 15 Okl. St. § 761.1, Beissel seeks recovery of all money and all other valuable consideration paid for the Driving Opportunity, actual damages, interest, and reasonable attorneys' fees and costs on behalf of himself and the putative Class as well as a declaration that Western Flyer's conduct constituted unconscionable acts and practices and for penalties in the amount of $2,000 per violation pursuant 15 Okl. St. § 761.1 B.

**SECOND CLAIM FOR RELIEF**
**Deceptive Trade Practices**
**Oklahoma Deceptive Trade Practices Act, 78 Okl. St. §§ 52, *et seq.***

53.     Beissel re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

54.     The Oklahoma Deceptive Trade Practices Act, 78 Okl. St. §§ 52, et seq. bars deceptive trade practices including but not limited to "Knowingly mak[ing] a false representation as to the characteristics, ingredients, uses, benefits or quantities of goods or services or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith."

55.     The representations, omissions, and conduct of Western Flyer as described above in paragraphs 13-29 above constitute deceptive trade practices.

56.     In the conduct described above, Western Flyer acted intentionally with malice and/or with reckless disregard toward the rights of Beissel and the putative Class entitling Beissel and the putative Class to an award of punitive damages under applicable law.

57.     Pursuant to Federal Rules of Civil Procedure 8(a)(3) and 8(d)(2), Plaintiff is entitled to plead in the alternative. *See also Blazer v. Black*, 196 F.2d 139, 144 (10th Cir. 1952) (parties are entitled to plead in the alternative regardless of consistency). If Plaintiff truly was an independent contractor – an independent business, as opposed to something more akin to an employee – he necessarily would have been able to provide transportation services for any client of his choosing.  And because, as an independent business, Plaintiff would be entitled to haul for other carriers, he is necessarily Defendant's competitor, even if he also drove for Defendant. But Defendant restrained Plaintiff's ability to haul for other carriers through the cumulative effect of Defendant's Operator and Lease Agreements. Defendant placed burdensome and oppressive conditions on Plaintiff's ability to haul for other carriers, or outright denied Plaintiff this right altogether. And by restraining this "independent contractor's" ability to haul for other carriers – by preventing this "competitor" from competing with Defendant's business – Defendant unlawfully restrained its competitor's ability to compete, run his "business," perform business services in an otherwise free market, obtain other business opportunities, and otherwise causing substantial losses of revenue generating opportunities.

58.     Pursuant to 78 Okla. Stat. § 54, Beissel seeks recovery of all money and all other valuable consideration paid for the Driving Opportunity, actual damages, exemplary damages, interest, injunctive relief, and reasonable attorneys' fees and costs on behalf of himself and the putative Class.

### THIRD CLAIM FOR RELIEF
**Actual and Constructive Fraud**

59.     Beissel re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

60.     Regarding actual fraud, as noted above in detail paragraphs 16-29, Western Flyer offered Beissel and the Class the Driving Opportunity making express positive false assertions and representations to each Driver in orientation that the Driving Opportunity would provide a career opportunity and further made false representations about the levels of miles, lengths of haul, and income Drivers had achieved and could expect. These representations were material – there is nothing more material in the sale of a business opportunity than representations regarding the earning of money. When Western Flyer made these false representations, it knew they were false and/or it made them recklessly without knowledge of the truth.   When Western Flyer made these false representations, it intended that Drivers would rely on them in making the decision to purchase the Driving Opportunity and the Drivers did so.

61.     Further, in Oklahoma, actual fraud may also be premised on the intentional concealment of material facts.  Here, Western Flyer concealed material facts from each Driver in orientation that Driver turnover was high, that the Driving Opportunity on the whole did not present a reasonable economic opportunity for Drivers, that Drivers purchasing the Driving Opportunity often failed within months and lost money, and that average Drivers 1)  earned nowhere close to the represented income, 2) often had weeks

where they earned very little or even went negative in their pay, and 3) never drove close to the number of average miles represented or that were necessary to breakeven.

62.    Regarding constructive fraud, once Western Flyer embarked on offering, advertising, pitching and selling the Driving Opportunity to Beissel and all other Drivers, it owed them a duty of full and truthful disclosure.   Western Flyer made material representations as noted above in paragraphs 16-29 in derogation of its duty to tell the full truth.  Moreover, Western Flyer did not disclose to Drivers in orientation the material facts of the high turnover of Drivers purchasing the Driving Opportunity and that most if not all Drivers failed to achieve such a career and positive income over any sustained period. Western Flyer did not disclose to Drivers in orientation the material facts that Drivers purchasing the Driving Opportunity often failed within months and lost money, and that average Drivers 1) earned nowhere close to the represented income on a sustained basis, 2) often had weeks where they earned very little or even went negative in their pay, and 3) never drove close to the number of average miles represented or that were necessary to breakeven.  These undisclosed facts were known only to Western Flyer and not within the reasonable attention and observation of Beissel and other Drivers that purchased the Driving Opportunity.

63.    These misstatements and omissions were material and Beissel and the putative class relied on such misstatements and omissions in purchasing the Driving Opportunity.  Had Western Flyer provided the full truth, Beissel and the putative class would not have purchased the Driving Opportunity.

64.    Beissel and the putative Class suffered damages as a result of Western Flyer's material misstatements and omissions in that they paid moneys for the Driving Opportunity and were defrauded out of their labor.

65.    In the conduct described above, Western Flyer acted intentionally with malice and/or with reckless disregard toward the rights of Beissel and the putative Class entitling Beissel and the putative Class to an award of actual, consequential, and punitive damages under applicable law.

## FOURTH CLAIM FOR RELIEF
### Negligence Per Se

66.    Beissel re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

67.    In Oklahoma, the negligence per se doctrine is employed to substitute state or federal statutory and/or regulatory standards for parallel common law, reasonable care duties of care. When courts adopt these standards for causes of action for negligence, violating a statute or regulation constitutes negligence per se.

68.    In this case, Western Flyer violated 1) Section 5(a) of the FTC Act, 15 U.S.C. § 45(a) (the Act), which prohibits unfair or deceptive acts or practices in or affecting commerce and 2) 16 C.F.R. § 437.1 et seq commonly referred to as the Federal Trade Commission's Trade Regulation Rule entitled "Disclosure Requirements and Prohibitions Concerning Business Opportunities" a/k/a the "Business Opportunity Rule" (the Rule). The Rule was adopted to specifically prevent unfair and deceptive practices in the sale of

business opportunities through pre-sale disclosure of specified items of material information and prohibiting misrepresentations and other misleading practices.

69.    Generally, a deceptive act or practice under § 5(a)(1) has three elements: (1) a representation, omission, or practice, that (2) is likely to mislead consumers acting reasonably under the circumstances, and (3), the representation, omission, or practice is material.  Here, as noted above in detail paragraphs 16-29, Western Flyer offered Beissel and the Class the Driving Opportunity making express positive false assertions and representations to each Driver that the Driving Opportunity would provide a career opportunity and further made false representations about the levels of miles, lengths of haul, and income Drivers had achieved and could expect while concealing the true facts that Drivers purchasing the Driving Opportunity often failed within months and lost money, and that average Drivers 1) earned nowhere close to the represented income on a sustained basis, 2) often had weeks where they earned very little or even went negative in their pay, and 3) never drove close to the number of average miles represented or that were necessary to breakeven.  These representations and omissions – which tended to bear directly on the economic viability of the Driving Opportunity -- were both likely to mislead and were material.  Indeed, there is nothing more important to consumers in the sale of a business opportunity than representations regarding and relating to profit potential.

70.    Western Flyer also violated the Rule.  The Driving Opportunity was a business opportunity covered by the Rule in that it solicited Drivers to enter into a business that required them to make payments and in which Western Flyer made representations

71.     that it would pay the Drivers for driving services provided to Western Flyer. 16 C.F.R. § 437.1.  Western Flyer was thus a business opportunity seller under the Rule and the Drivers were purchasers.

72.     Wester Flyer violated the Rule by not providing the required disclosures and material information.   16 C.F.R. §§ 437.1, 437.3(a), and 437.4(a)(4).   Western Flyer violated the Rule and the Act by making false and unsubstantiated earnings claims and other misrepresentations including but not limited to about the central characteristics of the business opportunity.  16 C.F.R. §§ 437.4 (a), 437.6.

73.     Western Flyer's violations of the Rule and the Act proximately caused injury and damage to the Drivers.  The Rule and the Act were intended to prevent purchasers of business opportunities from being misled and prevent sellers from misleading purchasers in the offer, sale, and promotion of a business opportunity.  Drivers, as purchasers of the Driving Opportunity are within the class of persons to be protected by both the Rule and the Act.

74.     Had Western Flyer complied with its disclosure obligations under the Rule and further not mispresented and concealed material facts, the Drivers would not have purchased the Driving Opportunity.

75.     In the conduct described above, Western Flyer acted negligently towards Beissel and the putative Class entitling Beissel and the putative Class to an award of damages under applicable law.

## **PRAYER FOR RELIEF**

WHEREFORE, Beissel prays for relief as follows:

a)    Damages and restitution according to proof at trial for all injuries, as provided by the Oklahoma Law;

b)    For a declaratory judgment that Western Flyer has violated Oklahoma law and public policy as alleged herein;

c)    For preliminary, permanent, and mandatory injunctive relief prohibiting Western Flyer, its officers, agents, and all those acting in concert with them from committing in the future those violations of law herein alleged;

d)    For an order awarding Beissel and the Class members compensatory damages, including restitution, recovery of all money and other valuable consideration paid for the Driving opportunity, actual damages, and all other sums of money owed to Beissel and Class members, together with interest on these amounts, according to proof;

e)    For an order awarding Beissel and the Class members civil penalties pursuant to Oklahoma law, with interest thereon;

f)    For an award of reasonable attorneys' fees as provided by Oklahoma law;

g)    For all costs of suit;

h)    For interest on any damages and/or penalties awarded, as provided by applicable law; and

i)    For such other and further relief as this Court deems just and proper.

Dated: October 15, 2021          Respectfully submitted,


 /s/ *Rachel Lawrence Mor*
Rachel Lawrence Mor, OBA #11400
RACHEL LAWRENCE MOR, P.C.
Michael J. Blaschke, OBA #868
MICHAEL J. BLASCHKE, P.C.
Landmark Towers West, Suite 1000
3555 N.W. 58th Street
Oklahoma City, Oklahoma 73112
Telephone: (405) 562-7771
Facsimile: (405) 285-9350
rmor@thelawgroupokc.com
mblaschke@thelawgroupokc.com

Carolyn H. Cottrell (*pro hac vice* to be submitted)
David Leimbach (*pro hac vice* to be submitted)
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel: (415) 421-7100
Fax: (415) 421-7105
ccottrell@schneiderwallace.com
dleimbach@schneiderwallace.com

Robert S. Boulter (*pro hac vice* to be submitted)
LAW OFFICES OF ROBERT S. BOULTER
1101 5th Ave #310
San Rafael, CA 94901
Tel: (415) 233-7100
rsb@boulter-law.com

***Attorneys for Beissel and the Putative Class***

## DEMAND FOR JURY TRIAL

Beissel hereby demands a jury trial on all claims and issues for which Beissel is entitled to a jury.

Dated: October 15, 2021      Respectfully submitted,

_/s/ Rachel Lawrence Mor_
Rachel Lawrence Mor, OBA #11400
RACHEL LAWRENCE MOR, P.C.
Michael J. Blaschke, OBA #868
MICHAEL J. BLASCHKE, P.C.
Landmark Towers West, Suite 1000
3555 N.W. 58th Street
Oklahoma City, Oklahoma 73112
Telephone: (405) 562-7771
Facsimile: (405) 285-9350
rmor@thelawgroupokc.com
mblaschke@thelawgroupokc.com

Carolyn H. Cottrell (_pro hac vice_ to be submitted)
David Leimbach (_pro hac vice_ to be submitted)
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel: (415) 421-7100
Fax: (415) 421-7105
ccottrell@schneiderwallace.com
dleimbach@schneiderwallace.com

Robert S. Boulter (_pro hac vice_ to be submitted)
LAW OFFICES OF ROBERT S. BOULTER
1101 5th Ave #310
San Rafael, CA 94901
Tel: (415) 233-7100
rsb@boulter-law.com

**_Attorneys for Beissel and the Putative Class_**

## CERTIFICATE OF SERVICE

This is to certify that on October 15, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties of record.

I also certify that on October 15, 2021, I served the attached document by email on the following, who are not registered participants of the Electronic Case Filing System:

Carolyn H. Cottrell
David Leimbach
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
ccottrell@schneiderwallace.com
dleimbach@schneiderwallace.com

Robert S. Boulter (*pro hac vice* to be submitted)
LAW OFFICES OF ROBERT S. BOULTER
1101 5th Ave #310
San Rafael, CA 94901
rsb@boulter-law.com

        /s/  *Rachel Lawrence Mor*