UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

ANDREW BEISSEL, an individual, J&B
ENTERPRISES, INC., a Colorado
Corporation, individually and on behalf of all
others similarly situated,

      Plaintiffs,

      v.

WESTERN FLYER EXPRESS, LLC,

      Defendant.

Case No. CIV-21-903-R

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT

COME NOW, Plaintiffs Andrew Beissel and J&B Enterprises, Inc. ("Plaintiffs"), by and through their undersigned counsel, move this Court for an Order:

1.    Granting preliminary approval of the Parties' Joint Stipulation of Settlement and Release of Class and Collective Action ("Settlement"), a true and correct copy of which is attached as Exhibit A to the Declaration of Carolyn H. Cottrell in support of this Motion;

2.    For settlement purposes, preliminarily certifying the state law claims as a Fed. R. Civ. P. 23 class on behalf of the Settlement Class;

3.    Preliminarily approving Plaintiff Andrew Beissel as Representative of the Class and as the Collective Representative of the FLSA Collective for purposes of the Settlement;

4.    Preliminarily approving Schneider Wallace Cottrell Konecky LLP and the Law Offices of Robert S. Boulter as Class Counsel for the Class and the FLSA Collective;

5.    Preliminarily approving CPT Group as Settlement Administrator and preliminarily approving the costs of the claims administration;

6.    Preliminarily approving Class Counsel's request for attorneys' fees and costs;

7.    Approving the Class Notice, a true and correct copy of which is attached to the Settlement as Exhibit 1;

8.    Authorizing the Settlement Administrator to mail the approved Class Notice; and

9.    Approving the proposed schedule and procedure for completing the final approval process as set forth in the Settlement.

Plaintiffs bring this Motion pursuant to Federal Rules of Civil Procedure 23 (e) and long-established precedent requiring Court approval for class action settlements and Fair Labor Standards Act settlements. This Motion is based on the accompanying Memorandum of Law, the Declaration of Carolyn H. Cottrell in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of the Settlement, the attached Exhibits, and all other records, pleadings, and papers on file in this action. Pursuant to the terms of the Settlement, Defendant does not oppose this Motion.

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................ 1

II.  BACKGROUND ................................................................................. 1

III. KEY TERMS OF SETTLEMENT ...................................................... 4

IV.  THE COURT SHOULD GRANT PRELIMINARY APPROVAL
     OF THE SETTLEMENT AS TO THE CLASS AND APPROVAL
     OF THE SETTLEMENT AS TO THE COLLECTIVE ............................ 7

     A.   Legal Standard ................................................................................ 7

     B.   The Court Should Conditionally Certify the Class for
          Settlement ...................................................................................... 9

          1.   There Are Numerous Questions of Law and Fact
               Common To The Class ................................................................ 9

          2.   Plaintiffs' Claims Are Typical of The Class ........................ 10

          3.   Plaintiffs and Class Counsel Will Fairly and
               Adequately Protect The Interests of The Class ................. 11

     C.   Federal Rule of Civil Procedure 23(B) Requirements Are
          Satisfied ........................................................................................ 11

          1.   Questions of Law and Fact Common to Class Members
               Predominate Over Any and All Individual Issues ............ 11

          2.   A Class Action is Superior to Any Other Available
               Method For The Fair and Efficient Adjudication of
               the Controversy .......................................................................... 17

     D.   The Proposed Settlement is Fair, Reasonable, and Adequate,
          and Should Be Preliminarily Approved ...................................... 18

          1.   The Proposed Settlement Is the Product of Extensive
               Arm's-Length Negotiations Between Experienced Counsel
               and Assisted by an Experienced Mediator. ........................ 18

          2.   Serious Questions of Law and Fact Exist and the
               Value of an Immediate Recovery Outweighs the

Mere Possibility of Future Relief after Protracted and
Expensive Litigation. ............................................................. 20

3.    The Parties Agree that the Settlement Is Fair and
Reasonable, Further Supporting Preliminary Approval. .................. 22

4.    The Court Should Grant Approval of the Settlement
as to the Collective. ................................................................ 24

5.    The Proposed Notice is Reasonable ...................................... 27

6.    The Court Should Approve the Proposed Schedule.......................... 29

V.    CONCLUSION........................................................................... 31

CERTIFICATE OF SERVICE ............................................................... 33

# TABLE OF AUTHORITIES

*Adamson v. Bowen,*
  855 F.2d 668 (10th Cir. 1988) ..................................................... 10

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 S.Ct. 2231 L.Ed.2d 689 (1997)............................... 11

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds,*
  568 U.S. 455 (2013)..................................................................... 16

*Amoco Prod. Co. v. Fed. Power Comm'n,*
  465 F.2d 1350 (10th Cir. 1972) ..................................................... 7

*Anderson v. Boeing Co.,*
  222 F.R.D. 521 (N.D. Ok. 2004) .............................................. 9, 10

*Anderson v. City of Albuquerque,*
  690 F.2d 796 (10th Cir.1982) ...................................................... 10

*Armstrong v. Bd. of Sch. Dirs.,*
  616 F.2d 305 (7th Cir. 1980) ......................................................... 7

*Ashley v. Reg'l Transp. Dist.,*
  2008 U.S. Dist. LEXIS 13069 (D. Colo. 2008)...................... 19, 21

*Baker v. Vail Resorts Mgmt. Co.,*
  Civil Action No. 13-cv-01649-PAB-CBS,
  2014 U.S. Dist. LEXIS 22812, 2014 WL 700096, (D. Colo. Feb. 24, 2014) .............. 25

*Big O Tires, Inc. v. Bigfoot 4x4, Inc.,*
  167 F. Supp. 2d 1216 (D. Colo. 2001)............................................ 7

*Brooklyn Savings Bank v. O'Neil,*
  324 U.S. 697, 65 S. Ct. 895, 89 L. Ed. 1296 (1945)..................... 26

*CGC Holdings Co., LLC v. Broad & Cassel,*
  773 F.3d 1076 (10th Cir. 2014) .............................................. 15, 16

*Childs v. Unified Life Ins. Co.,*
  No. 10-CV-23-PJC, 2011 U.S. Dist. LEXIS 138818,
  (N.D. Okla. Dec. 2, 2011)............................................................ 22

*DG ex rel. Stricklin v. Devaughn,*
  594 F.3d 1188 (10th Cir.2010) ...................................................... 9

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974)................................................................27

*Elmy v. Western Express, Inc.,*
   2021 U.S. Dist. LEXIS 139695 (M.D. Tenn. July 27, 2021) ..................................13, 17

*F.T.C. v. Freecom Commc'ns, Inc.,*
   401 F.3d 1192 (10th Cir. 2005) ...................................................13

*F.T.C. v. Stefanchik,*
   559 F.3d 924 (9th Cir. 2009) .....................................................13

*FTC v. Kitco of Nev., Inc.,*
   612 F. Supp. 1282 (D. Minn. 1985)................................................13

*Gooch v. Life Investors Ins. Co. of Am.*,
   672 F.3d 402 (6th Cir. 2012) ...................................................27, 29

*Gottlieb v. Wiles,*
   11 F.3d 1004 (10th Cir. 1993) ...................................................20

*Gundrum v. Cleveland Integrity Servs.*,
   No. 17-CV-55-TCK-tlw,
   2017 U.S. Dist. LEXIS 130255,  (N.D. Okla. Aug. 16, 2017) .........................8

*Horton v. Bank of Am., N.A.,*
   189 F.Supp.3d 1286 (N.D. Okla. 2016).............................................14

*Horton v. Molina Healthcare, Inc.,*
   No. 17-cv-0266-CVE-JFJ,
   2019 U.S. Dist. LEXIS 90377, (N.D. Okla. May 22, 2019)............................19

*Huddleston v. John Christner Trucking, LLC,*
   2020 U.S. Dist. LEXIS 15444 (N.D. Okla. Jan. 30, 2020)........................passim

*In re American Continental Corp./Lincoln Savings & Loan Securities Litigation,*
   140 F.R.D. 425 (D. Ariz. 1992) ..................................................13

*In re Motor Fuel Temperature Sales Practices Litig.,*
   258 F.R.D. 671 (D. Kan. 2009) ...................................................21

*In re Motor Fuel Temperature Sales Practices Litig.,*
   271 F.R.D. 221 (D. Kan. 2010) ...................................................10

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.,*
   2006 U.S. Dist. LEXIS 71039 (D. Colo. 2006)......................................21

*In re U.S. Foodservice Inc. Pricing Litig.*,
   729 F.3d 108 (2d Cir. 2013) ........................................................................ 16

*J.B. ex rel. Hart v. Valdez*,
   186 F.3d 1280 (10th Cir.1999) ....................................................................... 9

*Johnson v. Tulsa*,
   2003 U.S. Dist. LEXIS 26379 (N.D. Okla. 2003) ......................................... 22

*Lawson v. Procare CRS, Inc.*,
   No. 18-CV-00248-TCK-JFJ, 2019 U.S. Dist. LEXIS 1695,
   (N.D. Okla. Jan. 4, 2019) ............................................................................. 25

*Lopez v. Santa Fe*,
   206 F.R.D. 285 (D.N.M. 2002) ...................................................................... 24

*Lucas v. Kmart Corp.*,
   234 F.R.D. 688 (D. Colo. 2006) ............................................................. 18, 22

*Lynn's Food Stores. Inc. v. U.S.*,
   679 F.2d 1350 (11th Cir. 1982) ..................................................................... 24

*Makaeff v. Trump Univ., LLC*,
   No. 3:10-cv-0940-GPC-WVG, 2014 U.S. Dist. LEXIS 22392,
   (S.D. Cal. Feb. 21, 2014) ............................................................................. 13

*Marcus v. Kan. Dept. of Revenue*,
   209 F. Supp. 2d 1179 (D. Kan. 2002) ...................................................... 19, 22

*McNeely v. Nat'l Mobile Health Care, LLC*,
   2008 U.S. Dist. LEXIS 86741, 41 (W.D. Okla. 2008) ................................... 21

*Menocal v. GEO Group, Inc.*,
   882 F.3d 905 (10th Cir. 2018) ....................................................................... 12

*Midland Pizza, LLC v. Sw. Bell Tel. Co.*,
   277 F.R.D. 637 (D. Kan. 2011) ....................................................................... 9

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950)....................................................................................... 27

*Murray v. D&J Motor Co.*,
   958 P.2d 823 (Okla. Civ. App. 1998) ............................................................ 14

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
   238 F.R.D. 482 (C.D. Cal. 2006) .................................................................. 13

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ............................................................................................ 27

*Pliego v. Los Arcos Mexican Rests., Inc*.,
  313 F.R.D. 117 (D. Colo. 2016) ................................................................ 8, 24, 26

*Roberts v. C.R. England, Inc.,*
  318 F.R.D. 457 (D. Utah 2017) ................................................................ 13, 15, 16

*Rutter & Wilbanks Corp. v. Shell Oil Co.,*
  314 F.3d 1180 (10th Cir. 2002) .............................................................. 11, 18, 25

*Sears v. Atchison, Topeka & Santa Fe Ry., Co*.,
  749 F.2d 1451 (10th Cir. 1984) ..................................................................... 7

*Shook v. El Paso Cnty*.,
  386 F.3d 963 (10th Cir. 2004) .................................................................... 8, 9

*Solis v. Top Brass, Inc.,*
  Civil Action No. 14-cv-00219-KMT, 2014 U.S. Dist. LEXIS 122502,
  (D. Colo. Sep. 3, 2014) ......................................................................... 25

*Tabor v. Hilti, Inc*.,
  703 F.3d 1206 (10th Cir. 2013) .................................................................. 8, 9

*Tha*cker v. Chesapeake Appalachia, L.L.C.,
  259 F.R.D 262 (E.D. Ky. 2009) .................................................................. 29

*Trevizo v. Adams,*
  455 F.3d 1155 (10th Cir. 2006) ..................................................................... 9

*Tripp v. Rabin,*
  No. 14-CV-2646-DDC-GEB, 2016 U.S. Dist. LEXIS 87691,
  2016 WL 3615572 (D. Kan. July 6, 2016) ..................................................... 8

*Trujillo v. Colo*.,
  649 F.2d 823 (10th Cir. 1981) ..................................................................... 7

*Tuten v. United Airlines, Inc*.,
  41 F. Supp. 3d 1003 (D. Colo. May 19, 2014) ............................................... 7

*Wilkerson v. Martin Marietta Corp.,*
  171 F.R.D. 273, 285 (D. Colo. 1997) ..................................................... 19, 20

## STATUTES

15 Okla. St. § 751, et. seq. ........................................................................ 2, 12, 14

15 Okla. St. Ann. § 752 (13) .............................................................................. 14

15 Okla. Stat. § 752, et seq. ................................................................................. 5

18 U.S.C. 1581 *et seq.* ........................................................................................ 4

29 U.S.C. § 206 ....................................................................................... passim

29 U.S.C. § 216 ................................................................................................ 26

78 Okla. St. § 52, et. seq. ..................................................................................... 2

78 Okla. Stat. § 52, et. seq. .................................................................................. 6

71 Okla. Stat. § 801, et. seq. ................................................................................ 5

## OTHER AUTHORITIES

Manual for Complex Litig. (Third) § 30.42 ................................................. 18, 28

Newberg On Class Actions,
    § 8.39 (3rd Ed. 1992) ................................................................................ 28

Newberg On Class Actions,
    § 4.22 at 153 (4th ed. 2002) ........................................................................ 9

Title 18 of U.S. Code **§** 1581 et. seq. ............................................................ 3, 6

## RULES

Fed. R. Civ. P. 23 ................................................................................... passim

## I.    <u>INTRODUCTION</u>

This class and collective Action is brought on behalf of current and former truck drivers hauling products throughout the United States for Defendant Western Flyer Express, LLC ("WFX"). The Action is based on WFX's alleged violations of the FLSA, Oklahoma consumer protection laws, and Federal trafficking statutes.

After two years of litigation and extensive arm's-length negotiations between counsel, the Parties have reached a global settlement of the Action, memorialized in the proposed Joint Stipulation of Settlement and Release of Class and Collective Action ("Settlement" or "Settlement Agreement").[1] Plaintiffs now seek preliminary approval of the Settlement as to the proposed Class and approval of the Settlement as to the Collective.

The Parties have resolved the claims of approximately 2,670 truck drivers, for a total non-reversionary settlement amount of $4,900,000. With this proposed Settlement, the Parties are resolving claims unlikely to have been prosecuted as individual actions. The Settlement provides an excellent benefit to the Class and an efficient outcome in the face of expanding and highly risky litigation. The Settlement is fair, reasonable, and adequate in all respects, and Plaintiffs respectfully request that the Court grant the requested approval.

## II.    <u>BACKGROUND</u>

On December 7, 2020, Plaintiffs filed a class action complaint against WFX in the

---

[1] The Settlement is attached as **Exhibit A** to the accompanying Declaration of Carolyn H. Cottrell in Support of Plaintiff's Motion for Preliminary Approval of Class and Collective Action Settlement ("Cottrell Decl.").

Northern District of Oklahoma. *See* ECF No. 2. Plaintiffs alleged that WFX has misled and fraudulently induced its drivers into hauling products for WFX by, among other things, misrepresenting the income they would earn, and failing to disclose key information about WFX's driver program. *See id.* Based on these allegations, Plaintiffs alleged claims under the Oklahoma Consumer Protection Act, 15 Okla. St. §§ 751, et seq. ("OCPA"), Oklahoma Deceptive Trade Practices Act, 78 Okla. St. §§ 52, et seq. ("ODTPA"), in addition to other related common law claims. *See id.*

Prior to filing its Answer to Plaintiffs' allegations, WFX brought a motion to dismiss and a motion to transfer venue. ECF Nos. 24, 25. The matter was opposed and fully briefed. ECF Nos. 26, 27. On September 14, 2021, the Court granted WFX's motion to transfer, and the matter was transferred to this Court. ECF No. 31, 32. Once venued in this Court, on October 1, 2021, the Court granted WFX's motion to dismiss Plaintiffs' claim under the ODTPA, but provided Plaintiffs leave to amend. ECF No. 36.

Plaintiffs filed an amended complaint on October 15, 2021, asserting the same causes of action, but adding additional allegations in support of the claims. ECF No. 37. WFX again moved to dismiss Plaintiff's claim under the ODTPA. ECF No. 41. The matter was opposed and fully briefed. ECF Nos. 50 – 56. On December 14, 2021, the Court granted WFX's motion to dismiss the ODTPA claim. ECF No. 57. Following the Court's exclusion of the ODTPA claims, WFX filed its Answer containing general and specific denials of Plaintiffs' allegations. ECF No. 59.

Shortly thereafter, the Parties began to discuss the possibility of settlement. ECF No. 64. The Parties agreed to exchange a wide variety of informal discovery to better

understand the relative strengths and weaknesses of the claims and defenses at issue, and scheduled a mediation for July 19, 2022, to take place before Michael Russell, an experienced and well-respected mediator. ECF No. 71.

During this time, Plaintiffs continued their own independent investigation into the claims at issue, and further investigated whether other potential claims were viable and should be asserted. Cottrell Decl., ¶ 13. Plaintiffs determined there was reasonable argument that WFX's independent contractor drivers were misclassified under the FLSA, and made the decision to pursue these claims. *Id.* Plaintiffs also determined that WFX's conduct could potentially violate federal trafficking statutes, and determined they would pursue claims under Title 18 of U.S. Code Section 1581 et seq. pertaining to debt servitude and/or peonage and involuntary servitude. *See id.*

After a full day of mediation, the Parties reached a tentative settlement on July 19, 2022. *Id.*, ¶ 14. In reaching this settlement, Plaintiffs relied on informal discovery provided by WFX, their own independent investigations, and evaluated the strengths and weaknesses of the claims then-pled in the operative first amended complaint, as well as claims under the FLSA and federal trafficking statutes, evaluating the risks and likelihood of success on both certification and merits issues pertaining to each claim. *Id.*, ¶¶ 12-14.

However, there were disputes on many key terms in the drafting of the long-form settlement agreement. *Id.*, ¶ 15. Between July 19, 2022 and December 14, 2022, the Parties committed time and effort virtually every week to achieve a mutually agreeable long-form settlement agreement, meeting, conferring, negotiating, and exchanging drafts of the agreement throughout the process. *Id.*

The Parties executed the full Settlement Agreement on December 14, 2022. *Id.*, ¶ 16. Pursuant to this Settlement Agreement and the Parties' discussions during mediation, Plaintiffs filed a Second Amended Complaint on December 16, 2022, asserting claims under the FLSA and 18 U.S.C. 1581 *et seq.* ECF No. 79. WFX filed its answer to the Second Amended Complaint denying Plaintiffs' allegations and asserting various affirmative defenses. ECF No. 80.

## III.    <u>KEY TERMS OF SETTLEMENT</u>

Under the Settlement, WFX will pay a non-reversionary Gross Settlement Amount of Four Million and Nine Hundred Thousand Dollars ("$4,900,000.00") to resolve this litigation. Settlement, ¶¶ I.20; III.1. This amount includes all payments to the Class and Collective Members; proposed attorneys' fees and costs; proposed service award; the costs of settlement administration (estimated at $21,500.00, *see* Cottrell Decl., ¶ 17); and any other obligation of WFX under this Settlement. *See* Settlement, ¶ III.1. The Net Settlement Amount, the amount distributed to Class Participants, is approximately $3,120,166.63. Cottrell Decl., ¶ 18; *see* Settlement, ¶ I.23. This amount is the Gross Settlement Amount less costs of settlement administration, proposed attorneys' fees and costs, and proposed service award. Settlement, ¶ I.23.

The entire Gross Settlement Amount will be disbursed pursuant to the terms of the Settlement, and <u>none</u> of it will revert to WFX. *Id.*, ¶ I.20. Other key terms of the Settlement include:

- <u>Oklahoma Class</u>: A portion of the Net Settlement Amount will be distributed to Oklahoma Class Members, who are defined as "All current and former individuals who provide(d) transportation services for WFX within the United States, who

4

entered into an Independent Contractor Agreement, or a similarly styled agreement, with WFX, from December 7, 2017 to July 19, 2022." Settlement, ¶ I.5.

- <u>FLSA Collective Members</u>:[2] A portion of the Net Settlement Amount will be distributed to FLSA Collective Members, who are defined as "all current and former individuals who provided transportation services for WFX within the United States, between December 7, 2017 and July 19, 2022, who (1) entered into an Independent Contractor agreement with WFX (2) were classified as independent contractors, and (3) sign or cash the settlement check(s) they receive as a result of this settlement." *Id.*, ¶ I.17.

- <u>Notice of Settlement</u>: The Settlement Administrator will send a Notice to all Class Members via U.S. mail. *Id.*, ¶¶ I.8, VI.2, Ex. 2 (Notice of Settlement). The Settlement Administrator will re-mail undeliverable mailings to those with a forwarding address, and further conduct skip-tracing or other computer searches to ensure an updated address is found for any further re-mailings. *Id.,* ¶ VI.2.

- <u>Class Participants</u>: Class Members do not have to submit claims to receive a settlement payment. *Id.*, ¶ VI.3 & VI.4. Each Class Member will have 60 days from the mailing of the Notice of Settlement to request for exclusion (opt-out) or object to the Settlement. *Id.,* ¶¶ VI.3-4.

- <u>Released Claims</u>: Class Participants will release all claims, whether known or unknown, that were alleged or, based on the allegations contained in the original, first amended, or second amended complaints, could have been alleged, on behalf of individuals who drove for WFX as an independent contractor from December 7, 2017 to July 19, 2022. *Id.*, ¶ I.30; X.1. The Released Claims include, but are not limited to, all wage and hour claims under the FLSA, 29 U.S.C. §§ 206, et seq., that were alleged, inferred, pled or could have been pled based on the factual allegations in the Second Amended Complaint, all claims for the unlawful sale of business opportunities under the Oklahoma Business Opportunity Sales Act, 71 Okla. Stat. §§ 801, et seq.; all claims for deceptive and unfair trade practices under the Oklahoma Consumer Protection Act, 15 Okla. Stat. §§ 752, et seq.; all claims for deceptive trade practices under the Oklahoma Deceptive Trade Practices Act, 78 Okla. Stat. §§ 52, et seq.; all claims for constructive fraud, fraud, misrepresentation, and negligent misrepresentation; and all claims under Title 18 of U.S. Code Section 1581 et seq. pertaining to debt servitude and/or peonage and involuntary servitude. *See id.*

- <u>Released Parties</u>: The Released Claims will apply to the Released Parties, including

---

[2] Oklahoma Class and FLSA Collective Members are collectively referred to as "Class Members."

WFX and its present and former parent or holding companies, subsidiaries, divisions, affiliates of all kinds and degrees, successors, predecessors, related companies or joint ventures, and each of their present and former officers, directors, shareholders, agents, employees, insurers, attorneys, accountants, auditors, advisors, representatives, consultants, administrators, trustees, general and limited partners, predecessors, successors and assigns. *Id.,* ¶ I.31.

- Appointment of Administrator: The Parties request that CPT Group be appointed to serve as Settlement Administrator, to undertake its best efforts to ensure that the Notice of Settlement and settlement checks are provided to the current addresses of Class Members and Class Participants, respectively, to provide weekly updates, to perform tax reporting, to create and maintain a settlement website, to create and maintain a toll-free telephone number to field inquiries, process opt-out requests, to calculate and distribute settlement payments, and to be available to respond to administrative queries. VI.1-7.

- *Pro Rata* Distribution: Each Class Participant (Class Members who do not validly opt-out of the Settlement) will receive a *pro rata* portion of the Net Settlement Amount based on the number of settlement shares they are assigned. Settlement, ¶¶ VII.2-3. Settlement Shares are based on the number of workweeks the individual worked compared to the total number of workweeks all Class Participants worked. *Id.,* ¶¶ VII.2-3. FLSA Collective Members will receive 1 settlement share per workweek (FLSA Workweeks). *Id.,* ¶ VIII.2.b. To reflect the applicable value of Oklahoma state law claims and federal trafficking claims, Class Members will receive: 2 settlement shares per workweek. *Id.* The total number of settlement shares for all Class Participants will be added together and the resulting sum will be divided into the Net Settlement Amount to reach a per share dollar figure. *Id.,* ¶ VII.3.c. That figure will then be multiplied by each Class Participant's number of settlement shares to determine the Class Participant's *pro rata* portion of the Net Settlement Amount. *Id.*

- Tax Allocation: The Settlement provides that all individual settlement awards to Class Participants will be reported on an IRS Form 1099. *Id.,* ¶ III.4.

- Service Award: The Settlement provides that Plaintiffs will seek a service payment to Named Plaintiff Andrew Beissel, of $25,000 (subject to Court approval) to compensate him for his time and effort in service of the Class, as well as in exchange for a general release. *Id.,* ¶¶ I.32, III.2, X.2. The proposed service award in the amount of $25,000 for Plaintiff Beissel represents 0.51% of the Gross Settlement Amount.

- Attorneys' Fees and Costs: Class Counsel's attorneys' fees and litigation expenses are included in the Gross Settlement Amount. Settlement, ¶ IV.1. The Settlement provides that WFX does not oppose a fee application of up 33.33% of the Gross

Settlement Amount (i.e., $1,633,170), plus reasonable out-of-pocket costs of up to $100,000. *See id.*

- *Cy Pres*: Any funds still remaining after the 180-day check cashing period will be redistributed to Class Participants on a prorated basis, and any additional settlement administration costs related to the redistribution will be deducted from the total amount of uncashed funds prior to redistribution. Settlement, ¶ VII.8. Following this redistribution, any remaining funds will be paid via cy pres in equal portions to: (1) St. Christopher Truckers Relief Fund, (2) Meals for 18 Wheels, and (3) Truckers Final Mile, the Parties' agreed-upon *cy pres* beneficiaries. *Id.* These organizations bear a substantial nexus to the interests of the Class Members as they are all committed to supporting and aiding truck drivers.

## IV.  THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE SETTLEMENT AS TO THE CLASS AND APPROVAL OF THE SETTLEMENT AS TO THE COLLECTIVE

### A.  Legal Standard

Courts strongly favor settlement as a method for resolving disputes. *See Amoco Prod. Co. v. Fed. Power Comm'n*, 465 F.2d 1350, 1354 (10th Cir. 1972); *see also Sears v. Atchison, Topeka & Santa Fe Ry., Co*., 749 F.2d 1451, 1455 (10th Cir. 1984); *Trujillo v. Colo*., 649 F.2d 823, 826 (10th Cir. 1981) (citing "important public policy concerns that support voluntary settlements").  This is especially true in complex class actions, as is the case here. *See Big O Tires, Inc. v. Bigfoot 4x4, Inc*., 167 F. Supp. 2d 1216, 1229 (D. Colo. 2001). "[The] presumption in favor of voluntary settlement agreements is especially strong in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Tuten v. United Airlines, Inc*., 41 F. Supp. 3d 1003, 1007 (D. Colo. May 19, 2014); *see also, Armstrong v. Bd. of Sch. Dirs*., 616 F.2d 305, 313 (7th Cir. 1980) ("In the class action context in particular, there is an overriding public interest in favor of settlement. . . .").

Fed. R. Civ. P. 23 (e) requires judicial approval for any compromise of claims

brought on a class-wide basis. "Preliminary approval of a class settlement requires the Court to assess (1) whether the matter is suitable for certification as a class action under Rule 23 and (2) the overall fairness of the proposed settlement . . . [and] the adequacy of the notice the parties propose to send out." *Gundrum v. Cleveland Integrity Servs.*, No. 17-CV-55-TCK-tlw, 2017 U.S. Dist. LEXIS 130255, at *13 (N.D. Okla. Aug. 16, 2017) (internal quotation marks and citation omitted). The "objective of the court's inquiry at the preliminary approval stage is to determine whether to direct notice of the proposed settlement to class members, permit the opportunity for objections, and schedule a fairness hearing." *Id.* (citing *Tripp v. Rabin*, No. 14-CV-2646-DDC-GEB, 2016 U.S. Dist. LEXIS 87691, 2016 WL 3615572, at *2 (D. Kan. July 6, 2016)). "Because preliminary approval is just the first step, courts apply a 'less stringent' standard than that at final approval." *Tripp*, 2016 U.S. Dist. LEXIS 87691, at *6.

The standard for approval of a settlement is that the settlement is fair, adequate and reasonable to the class. *Pliego v. Los Arcos Mexican Rests., Inc*., 313 F.R.D. 117, 128 (D. Colo. 2016). A trial court may certify a class when it determines the proposed class satisfies the prerequisites of Federal Rule of Civil Procedure 23 (a), and one of the requirements of Rule 23(b). *See Shook v. El Paso Cnty*., 386 F.3d 963, 971 (10th Cir. 2004); *Tabor v. Hilti, Inc*., 703 F.3d 1206 (10th Cir. 2013); *Gundrum,* 2017 U.S. Dist. LEXIS 130255, at *14 (citing *Pliego,* 313 F.R.D. at 128).

Plaintiffs now asks this Court to take the first step in the review process, and preliminarily approve the Class for settlement approval. Given the complexity of this litigation, the potential and continued risks if the Parties were to proceed, the Settlement

represents a favorable resolution of this Action and eliminates the risk that the Class might

otherwise recover nothing.

**B.    The Court Should Conditionally Certify the Class for Settlement**

The trial court may certify a class when it determines the proposed class satisfies

the prerequisites of Federal Rule of Civil Procedure 23(a), and one of the requirements of

Rule 23(b). *See Shook v. El Paso Cnty.,* 386 F.3d 963, 971 (10th Cir. 2004); *Tabor v. Hilti,*

*Inc.,* 703 F.3d 1206 (10th Cir. 2013). In performing its analysis under Rule 23, the court

"must accept the substantive allegations of the complaint as true[.]" *Midland Pizza, LLC v.*

*Sw. Bell Tel. Co*., 277 F.R.D. 637, 639 (D. Kan. 2011) (quoting *DG ex rel. Stricklin v.*

*Devaughn*, 594 F.3d 1188, 1194 (10th Cir.2010)).[3]

**1.    There Are Numerous Questions of Law and Fact Common to the Class**

Rule 23(a)(2) requires that there be questions of law or fact common to the class.

Rule 23(a)(2) does not require that plaintiffs establish that all facts or legal issues are

common to the class. It requires only a single question of law or fact common to the class.

*Anderson v. Boeing Co*., 222 F.R.D. 521, 531 (N.D. Ok. 2004); *J.B. ex rel. Hart v. Valdez*,

186 F.3d 1280, 1288 (10th Cir.1999). Because courts in Rule 23(b)(3) cases often apply

the Rule 23(a)(2) commonality requirement and the 23(b)(3) predominance tests together,

---

[3] To satisfy the numerosity requirement of Rule 23(a)(1), Plaintiffs must establish that the class is so numerous so as to make joinder impracticable. Fed. R. Civ. P. 23(a); *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006). Here, there are approximately 2,670 Class Members. Numerosity is satisfied.

Plaintiffs discuss these common and predominating issues below. *See* NEWBERG ON CLASS ACTIONS, § 4.22 at 153 (4th ed. 2002).

### 2.    Plaintiffs' Claims Are Typical of The Class

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *Anderson,* 222 F.R.D. at 538. The interests and claims of the representative plaintiffs and class members need not be identical to satisfy typicality. *Anderson v. City of Albuquerque,* 690 F.2d 796, 800 (10th Cir.1982). Typicality is satisfied when a representative plaintiff's claims stem from the same practice or course of conduct forming the basis of the class claims and is based upon the same legal or remedial theory. *Adamson v. Bowen,* 855 F.2d 668, 676 (10th Cir. 1988); *In re Motor Fuel Temperature Sales Practices Litig.*, 271 F.R.D. 221, 229 (D. Kan. 2010).

Plaintiffs' claims are typical of the Class.  Plaintiffs' claims under Oklahoma consumer protection and federal trafficking statutes as well as the FLSA all arise from the same course of conduct and legal theory: WFX's alleged misrepresentations and omissions concerning the driving opportunity, and the control WFX allegedly can exercise over drivers by making them financially dependent upon WFX. If this case did not settle, Plaintiffs would prove these claims on behalf of the Class by resort to the same evidence: WFX's uniform contractual agreements; WFX's alleged uniform misrepresentations and omissions concerning the driving opportunity, particularly those taking place during orientation; and the Class-wide testimony of WFX's corporate witnesses. Plaintiffs' claims are therefore typical.

### 3.    Plaintiffs and Class Counsel Will Fairly and Adequately Protect the Interests of the Class

The final requirement of Rule 23(a) is adequacy of representation. "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1187–88 (10th Cir. 2002).

There are no conflicts of interest or antagonism between Plaintiffs and their counsel and the Class. Plaintiffs and the absent Class Members have a shared interest in recovering the money to which they are entitled under the FLSA, Federal and Oklahoma consumer protection laws, and common laws. To represent themselves and the Class, Plaintiffs retained counsel highly experienced in class action litigation.[4] Plaintiffs and their counsel have prosecuted, and will continue to prosecute, this action vigorously on behalf of the Class. Adequacy of representation requirement is satisfied.

### C.    Federal Rule of Civil Procedure 23(B) Requirements Are Satisfied

### 1.    Questions of Law and Fact Common to Class Members Predominate Over Any and All Individual Issues

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). "It is not necessary that all of the elements of the claim entail questions of fact and law that are common to the

---

[4] *See* Cottrell Decl., ¶¶ 5-7.

class, nor that the answers to those common questions be dispositive." *Menocal v. GEO Group, Inc.,* 882 F.3d 905, 914-15 (10th Cir. 2018). "Put differently, the predominance prong asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id*. (quotations omitted). The Court must "characterize the issues in the case as common or not, and then weigh which issues predominate." *Id*. The Court does so by "consider[ing] ... how the class intends to answer factual and legal questions to prove its claim—and the extent to which the evidence needed to do so is common or individual." *Id*.

Plaintiffs' Oklahoma claims are predominated by common questions of law and fact. For example, Plaintiffs' OCPA claim alleges WFX's representations and omissions concerning the driving opportunity constituted an "unlawful practice" under five subsections of Section 753. Even without the benefit of formal discovery, Plaintiffs can already identify the following claims of material misrepresentations and omissions that will apply to all Drivers: (1) alleged misrepresentations concerning the average miles per week Drivers can expect to receive; (2) alleged misrepresentations concerning the net income Drivers will realize; (3) alleged misrepresentations that Drivers will operate their own trucking business as independent contractors, when in fact, they are properly viewed as employees who are placed on perpetual standby without any predictable wage-earning opportunities; (4) alleged omissions concerning the near 200% turnover rate of the program; (5) alleged omissions concerning the significantly-less-than 1% completion rate of the program; (6) alleged omissions that significant portions of Drivers will *owe* WFX

money at the end of any given week; and (7) alleged omissions concerning the risks associated with the program.[5]

No single misrepresentation or omission forms the basis of Plaintiffs' theory of liability. Instead, WFX's alleged affirmative misrepresentations, omissions, and commonsense build upon one another to create the ultimate misrepresentation: WFX's driving opportunity simply does not provide a realistic chance for a career in the trucking business. This is a theory of liability that has recently been endorsed under virtually identical circumstances by federal district courts in Utah, Tennessee, and Oklahoma. *See Roberts v. C.R. England, Inc.,* 318 F.R.D. 457 (D. Utah 2017); *Huddleston v. John Christner Trucking, LLC,* 2020 U.S. Dist. LEXIS 15444 (N.D. Okla. Jan. 30, 2020); *Elmy v. Western Express, Inc.* 2021 U.S. Dist. LEXIS 139695 (M.D. Tenn. July 27, 2021).

---

[5] Courts routinely explain that misrepresentations and omissions concerning potential income or other characteristics of a business opportunity are material and deceptive. *See, e.g., F.T.C. v. Freecom Commc'ns, Inc.,* 401 F.3d 1192, 1203 (10th Cir. 2005); *F.T.C. v. Stefanchik,* 559 F.3d 924, 928 (9th Cir. 2009); *FTC v. Kitco of Nev., Inc.*, 612 F. Supp. 1282, 1291-92 (D. Minn. 1985) ("In particular, it is deceptive to misrepresent the benefits of a business opportunity."); *Makaeff v. Trump Univ., LLC,* No. 3:10-cv-0940-GPC-WVG, 2014 U.S. Dist. LEXIS 22392, at *24-25 (S.D. Cal. Feb. 21, 2014) ("the Court finds that the tightly orchestrated promotional campaign exposed class members to the alleged deceptive and misleading representations that are at issue here."); *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 491 (C.D. Cal. 2006) (finding common sense inference that no rational class member would have purchased annuities if adequate disclosure of facts had been made); *In re American Continental Corp./Lincoln Savings & Loan Securities Litigation,* 140 F.R.D. 425 (D. Ariz. 1992) ( "[T]he gravamen of the alleged fraud is not limited to the specific misrepresentations made...It is the underlying scheme which demands attention. Each plaintiff is similarly situated with respect to it, and it would be folly to force each bond purchaser to prove the nucleus of the alleged fraud again and again.").

Simply, every Court to have considered this exact theory of liability in the lease operator context has found identical evidence warranted class certification.

Importantly, there are no individual issues of reliance under the OCPA. The OCPA does not require reliance to make out a claim. *See Horton v. Bank of Am., N.A.,* 189 F.Supp.3d 1286, 1291 (N.D. Okla. 2016). The OCPA does not even use the word "rely" or "reliance." Nor does the language of the statute suggest such a showing is required to make out a claim. To the contrary, "[t]he Act does not specify when the representation must take place **or that the consumer rely upon the representation**." *Murray v. D&J Motor Co.,* 958 P.2d 823, 832 (Okla. Civ. App. 1998). Under the OCPA, a "deceptive trade practice" can occur "before, during or after a consumer transaction is entered and may be written or oral." *Id.*

That the OCPA does not broadly impose a reliance requirement is codified in the statute. The OCPA prohibits WFX from committing misrepresentations, omissions, or other practices that "have deceived or could **reasonably be expected to deceive or mislead a person** to the detriment of that person." *See* 15 Okla. St. Ann. § 752 (13); 753 (20) (emphasis added). The OCPA does not require a person to have *in fact* been deceived. It is enough that a person "could reasonably be expected" to have been deceived to recover both damages and statutory penalties under the statute.

Another example is the OCPA's catch-all prohibition for "unfair" practices. An "unfair trade practice" means any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Id*. § 752 (14). Whether WFX's alleged efforts to trick individuals into hauling

its goods by misrepresenting the nature of economic opportunity it was offering is an "unfair" practice can be determined without regard to whether Drivers relied upon a given misrepresentation or omission.

But even if a reliance requirement applied to some aspects of Plaintiffs' OCPA claim, the result should be the same as *Huddleston* and *Roberts*: A "common sense inference of reliance" will apply under Tenth Circuit precedent. See *CGC Holdings Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1089 (10th Cir. 2014). As the Tenth Circuit explained in *CGC Holdings*, a "commonsense inference of reliance" is appropriate in cases where "circumstantial evidence of reliance can be found through generalized, classwide proof." *Id.* at 1089. This commonsense inference of reliance applies "where the behavior of plaintiffs and the members of the class cannot be explained in any way other than reliance upon the defendant's conduct." *Id*. at 1089-90.

The question, then, will be whether the "behavior" of Plaintiffs and Class Members – i.e., their decision to join WFX's program – could be explained away by reasons having nothing to do with whether WFX was offering a feasible career choice. To answer that question, this Court would be encouraged to look to the decisions in *Huddleston* and *Roberts,* which deal with this identical question in the lease operator context.

Like this case, *Roberts* involved a class of truck drivers who alleged C.R. England developed a fraudulent plan to induce thousands of people to enroll in its driving program by promising the "ability to earn a desirable income driving as an independent contractor." *Roberts,* 318 F.R.D. at 467. The plaintiffs alleged they and other class members "were subjected to a misinformation campaign to convince them to lease trucks from the

Defendants and become independent contractor drivers affiliated with England. […] But many soon found they could not earn a living as they had been led to believe, and were left debt-ridden." *Id*.

*Roberts* held that an inference of reliance was warranted under this Court's decision in *CGC Holdings*. *Roberts* explained that "[i]ndividuals relied on promises of economic opportunity when they" joined C.R. England's program, and that these individuals "agreed to become independent contractors, operating under the assumption that the Driving Opportunity offered a feasible career choice." *Id.* at 514. And while C.R. England mustered many reasons for "why" someone may have joined its program,[6] *Roberts* correctly found that "common sense dictates that each class member's reason for attending driving school and joining the independent contractor program was the belief that Defendants offered an income and mileage opportunity that would support a career." *Id. Huddleston* relied on *Roberts* to come to the same conclusion in the lease operator case before it, explaining that "commonsense dictates that each class member's reason' for entering into an ICOA and Lease Agreement with JCT 'was the belief that [JCT] offered an income and mileage opportunity that would support a career.'" *Huddleston v. John Christner Trucking, LLC*, 2020 U.S. Dist. LEXIS 15444 at 61 (N.D. Okla. Jan. 30, 2020); see also, *Elmy v. Western*

---

[6] "[C]onjectural 'individualized questions of reliance,' which are 'far more imaginative than real[,] ... do not undermine class cohesion and thus cannot be said to predominate for purposes of Rule 23 (b)(3).'" *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 122 (2d Cir. 2013) (quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* 568 U.S. 455, 470 (2013)).

*Express, Inc.* 2021 U.S. Dist. LEXIS 139695 (M.D. Tenn. July 27, 2021) (certifying identical theories of liability under Tennessee law).

> **2.    A Class Action is Superior to Any Other Available Method for The Fair and Efficient Adjudication of the Controversy**

The last prerequisite for class certification is that the class action be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In making such a finding, courts have considered: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. See Fed. R. Civ. P. 23(b)(3)(A)-(D).

Management of this case as a class action would not impose such difficulty that individual actions would be a better way of resolving this controversy. There is no evidence that any Class Member has an interest in individually controlling the prosecution of their claims. Plaintiffs are not aware of any other wage and hour litigation pending against WFX involving the proposed Class. Given the common and predominate issues concerning the proper classification of Drivers, WFX's alleged uniform misrepresentations and omissions to the Class, concentrating the litigation of these claims in this forum is desirable. Finally, because common questions of law and fact predominate, there will be no difficulties to be encountered in the management of a class action.

**D.**    **The Proposed Settlement is Fair, Reasonable, and Adequate, and Should Be Preliminarily Approved**

The Tenth Circuit has identified four factors to determine whether a settlement is fair, reasonable, and adequate: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1188 (10th Cir. 2002)); *Lucas v. Kmart Corp.,* 234 F.R.D. 688, 693 (D. Colo. 2006). As demonstrated below, the Settlement satisfies each of the criteria and thus warrants this Court's preliminary approval.

**1.**    **The Proposed Settlement Is the Product of Extensive Arm's-Length Negotiations Between Experienced Counsel and Assisted by an Experienced Mediator**

Where, as here, a settlement results from "arm's length negotiations between experienced counsel after significant discovery [has] occurred, the Court may presume the settlement to be fair, adequate, and reasonable." *Lucas,* 234 F.R.D. at 693; *see also* MANUAL FOR COMPLEX LITIG. (THIRD) § 30.42, at 238. This action has been litigated for approximately two years. During this time, Class Counsel has conducted substantial informal discovery, interviewed many drivers, performed intensive research of the laws applicable to the claims and defenses at issue, and received all the class-wide data and information needed for certification and merits issues – indeed, the same type of information used to certify identical claims in *Huddleston.*

Following dispositive motion practice on the pleadings, the Parties began settlement

discussions and negotiations, which were conducted at arm's length and with the assistance of a highly experienced mediator. Cottrell Decl., ¶¶ 29-40. The negotiation process was hard-fought and protracted over months *Id*. Plaintiffs submitted comprehensive mediation statements and preliminary damages studies, which were thoroughly prepared by Class Counsel and based on years of discovery, documents, data, research, and dozens of interviews. *Id*.

Courts in this Circuit have found settlements fairly and honestly negotiated where "[t]he completeness and intensity of the mediation process, coupled with the quality and reputations of the mediator, demonstrate a commitment by the [p]arties to a reasoned process for conflict resolution that took into account the strengths and weaknesses of their respective cases and the inherent vagaries of litigation." *Wilkerson v. Martin Marietta Corp.,* 171 F.R.D. 273, 285 (D. Colo. 1997); *see also Horton v. Molina Healthcare, Inc.,* No. 17-cv-0266-CVE-JFJ, 2019 U.S. Dist. LEXIS 90377, at *2-3 (N.D. Okla. May 22, 2019) (finding a proposed class action settlement agreement fair and reasonable because, inter alia, it was "negotiated in good faith at arms' length between experienced attorneys familiar with the legal and factual issues of this case aided by an experienced and neutral third-party mediator"); *Ashley v. Reg'l Transp. Dist.,* 2008 U.S. Dist. LEXIS 13069, at *15-22 (D. Colo. 2008) (settlement fairly and honestly negotiated where the parties engaged in formal settlement mediation conference and negotiations over four months); *see also Marcus v. Kan. Dept. of Revenue,* 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002) ("When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable."). The

Settlement is a product of serious, informed, and non-collusive negotiations among experienced counsel and the mediator, and warrants preliminary approval.

> **2.    Serious Questions of Law and Fact Exist and the Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief after Protracted and Expensive Litigation**

Numerous, serious questions of law and fact exist in this Action, all of which are the subject of considerable risk if this case were to continue to be litigated.[7] Cottrell Decl., ¶¶ 29-40. For example, while Plaintiffs believe WFX misclassified its drivers, it cannot be denied that plaintiffs *rarely* succeed in prosecuting independent contractor misclassification cases under the FLSA – both as to certification and merits issues. *Id.* And of course, even if Plaintiffs succeeded on those fronts, misclassification is not inherently unlawful – wage and hour violations would still have to be proven. And because the FLSA exempts Class Members from overtime requirements and allows paid and unpaid time to be averaged together for minimum wage purposes, it is exceedingly difficult to prove damages, even if misclassification claims are both certified and proven on the merits.

Similarly, while Plaintiffs are confident in their ability to certify and prove claims under Oklahoma consumer protection statutes, the fact of the matter is these theories of liability are relatively new, and different Courts may come to different conclusions.

---

[7] *See also, Wilkerson*, 171 F.R.D. at 285 (the value of an immediate recovery, the "monetary worth of the settlement", "is to be weighed not against the net worth of the defendant, but against the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation." (citing *Gottlieb v. Wiles*, 11 F.3d 1004, 1015 (10th Cir. 1993))).

Indeed, it is notoriously difficult to certify *nationwide* classes who would assert claims based on misrepresentations, because different class members often receive different – even if subtly – representations.

These are serious questions of law and fact that create great uncertainty in Class Members' ability to recover anything. "The presence of such doubt tips the balance in favor of settlement because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation." *McNeely v. Nat'l Mobile Health Care, LLC*, 2008 U.S. Dist. LEXIS 86741, at *31-41 (W.D. Okla. 2008) (citing *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 2006 U.S. Dist. LEXIS 71039, at *16-18 (D. Colo. 2006)).

Moreover, the complexity, uncertainty, additional expense, and likely duration of further litigation also favor preliminary approval of the Settlement. *See In re Motor Fuel Temperature Sales Practices Litig.*, 258 F.R.D. 671, 681 (D. Kan. 2009) (granting preliminary approval because, inter alia, "[t]he costs of continued litigation are high, and it is possible that plaintiffs could receive little or no pecuniary relief"); *Ashley*, 2008 U.S. Dist. LEXIS 13069, at *15-22. "The class will be well compensated, relatively speaking, and is better off receiving compensation now as opposed to being compensated, if at all, several years down the line, after the matter is certified, tried, and all appeals are exhausted." *McNeely*, 2008 U.S. Dist. LEXIS 86741, at *31-41.

This Settlement represents not only a meaningful, immediate recovery for the Class, but also one without any risk or additional expenses of further litigation. Cottrell Decl., ¶¶ 29-40. This benefit must be considered to the risk that the Class may recover nothing after

certification proceedings, summary adjudication, appeals, contested trial, and most likely, further appeals, many years into the future, or that litigation would deplete funds available to satisfy a judgment. *See id.* These factors thus support preliminary approval of the proposed Settlement.

### 3. The Parties Agree that the Settlement Is Fair and Reasonable, Further Supporting Preliminary Approval

"Counsel['s] judgment as to the fairness of the agreement is entitled to considerable weight." *Childs v. Unified Life Ins. Co*., No. 10-CV-23-PJC, 2011 U.S. Dist. LEXIS 138818, at \*37 (N.D. Okla. Dec. 2, 2011) (quoting *Lucas,* 234 F.R.D. at 695 and *Marcus,* 209 F. Supp. 2d at 1183)). "In addition to considering the judgment of the parties with respect to the proposed settlement, the Court should also 'defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.'" *Johnson v. Tulsa,* 2003 U.S. Dist. LEXIS 26379, at \*39 (N.D. Okla. 2003).

Here, Class Counsel and WFX's counsel – law firms with great experience in complex class litigation, particularly in truck driver misclassification cases – have agreed to settle this Action after serious arms-length negotiation, extensive exchange of discovery, and many months of discussions. Cottrell Decl., ¶¶ 29-40. Class Counsel believes that the settlement amount is fair and reasonable in light of their extensive investigation, motion practice, the risks of continued litigation, and their overall experience. *Id.* Plaintiffs and Class Counsel further recognize the great expense and length of proceedings necessary to continue this litigation against WFX through formal discovery, certification, summary judgment, trial, and inevitable appeals. *Id.*

Based on Class Counsel's estimates, the Gross Settlement Amount of $4,900,000.00

represents a significant portion of the total calculated exposure at trial. *Id.* There are myriad ways to calculate economic damages in these types of cases, and all of them would have been the subject of substantial and costly economic expert discovery. *Id.* It is far from certain that the economic measure of damages for this claim that ultimately went to a jury – assuming the Class claims remained certified – would have reflected Plaintiffs' "best case scenario." *Id.* Nevertheless, class counsel estimates that WFX's maximum potential exposure is <u>no more</u> than $31,000,000.00. *Id.*, ¶ 33. In other words, even on Plaintiffs' best day at trial, this settlement – at this early stage – represents over 15% of the calculated exposure at trial. *Id.*

Importantly, when comparing the settlement in this case to settlements in virtually identical cases that have been approved, it is clear that the settlement in this case is much more than reasonable and adequate: it is exceptional. Here, there are 2,670 Class Members, who will receive an average gross recovery of $1,835.21. Cottrell Decl., ¶ 34. This amount **exceeds** the per-class member recovery obtained in *Huddleston*, a case that was litigated for six years, including dozens of motions, a successfully certified class and collective, and subsequent appeal. *Huddleston v. John Christner Trucking, LLC,* Case No. 4:17-cv-00549-GKF-FHM (N.D. Okla.) (settled for $9,250,000 on behalf of 5,647 drivers, for a recovery of $1,638 per class member). That Plaintiffs were able to obtain a greater per-class member recovery in this case than was obtained in the hard-fought *Huddleston* litigation confirms the settlement in this case is more than adequate.

Given the risks, delays, and uncertainty inherent in continued litigation, Plaintiffs and Class Counsel believe that the Settlement is fair and reasonable to avoid the cost and

uncertainty of continuing litigation. *Id.*, ¶¶ 29-40. The Settlement was further endorsed by the mediator. This factor thus supports the Court's preliminary approval of the proposed Settlement. *See Lopez v. Santa Fe,* 206 F.R.D. 285, 292 (D.N.M. 2002) ("[the] trial court is entitled to rely upon the judgment of experienced counsel for the parties . . . Indeed, the trial judge, absent fraud, collusion, or the like, should hesitate to substitute its own judgment for that of counsel.").

### 4. The Court Should Grant Approval of the Settlement as to the Collective

The standard for approval of an action arising under the FLSA requires only a determination the proposed settlement is a "fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." *Pliego v. Los Arcos Mexican Rests., Inc*., 313 F.R.D. 117, 127-125 (D. Colo. 2016) (citing *Lynn's Food Stores. Inc. v. U.S*., 679 F.2d 1350, 1354 (11th Cir. 1982)); *see also Lynn's Food Stores, Inc*., 679 F.2d at 1354 (recognizing courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness).

Under *Lynn's Food Stores*, a district court may find that a proposed settlement agreement resolves a *bona fide* dispute when it "reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute." 679 F.2d at 1354. "Parties requesting approval of an FLSA settlement must provide the Court with sufficient information to determine whether a bona fide dispute exists", such as, among others, a description of the dispute, plaintiff's justification for the unpaid wages, and the employer's justification for disputing the overtime wages. *Solis v. Top Brass, Inc.,* Civil Action No. 14-cv-00219-KMT, 2014 U.S. Dist. LEXIS 122502, at *4 (D. Colo. Sep.

3, 2014) (citing *Baker v. Vail Resorts Mgmt. Co*., Civil Action No. 13-cv-01649-PAB-CBS, 2014 U.S. Dist. LEXIS 22812, 2014 WL 700096, at *1 (D. Colo. Feb. 24, 2014)).

Because the Tenth Circuit Court of Appeals has not definitively set out FLSA specific criteria to use when assessing the fairness and reasonableness of a proposed settlement agreement, some district courts have looked to the same factors used in evaluating the fairness of class action settlements under Fed. R. Civ. P. 23. *See Baker*, 2014 U.S. Dist. LEXIS 22812, at *5-6 (citing *Rutter & Wilbanks Corp.*, 314 F.3d at 1188); *but see, Lawson v. Procare CRS, Inc.,* No. 18-CV-00248-TCK-JFJ, 2019 U.S. Dist. LEXIS 1695, at *4, 10-11 (N.D. Okla. Jan. 4, 2019) (noting "the majority of districts" "have held that such approval [of FLSA settlements] is not necessary"). These factors are: (1) whether the parties fairly and honestly negotiated the settlement; (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Id*.

Here, for the same reasons already addressed above, certification of the FLSA Collective and approval of the Settlement is warranted.[8]  The Settlement represents a *bona*

---

[8] Conditional certification and approval of the federal trafficking claims is warranted for the same reasons discussed with respect to the FLSA claim.  On a fundamental level, the federal trafficking claims revolve around whether WFX forced drivers into a state of indebted and/or financial servitude. A core contention in the FLSA and Oklahoma claims is that drivers were allegedly subject to WFX's complete control, and only permitted to drive for WFX, with the looming threat of financial ruin if drivers did not obey WFX orders.  This same core contention is at the heart of the federal trafficking claims. WFX denied these claims, outright. ECF No. 80.

*fide* dispute over whether FLSA Collective Members were actually misclassified and, as a result, were subject to wage and hour violations committed by WFX.  The Settlement represents a fair and reasonable compromise of this *bona fide* dispute.

The Settlement also furthers the purpose of the FLSA. Once the settlement is found to be fair and reasonable, the Court may also determine whether the agreement serves (or undermines) the purpose of the FLSA. *Pliego v. Los Arcos Mexican Rests., Inc.,* 313 F.R.D. 117, 130 (D. Colo. 2016). The "prime purpose" in enacting the FLSA "was to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707 n.18, 65 S. Ct. 895, 89 L. Ed. 1296 (1945). To help further its goals, the FLSA provides that an employee or multiple employees may bring an action "on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).

The Settlement represents a reasonable compromise of the risks faced by Plaintiffs and the FLSA Collective had this case proceeded to trial following protracted litigation and appeals. The Settlement also furthers the purposes of the FLSA by providing FLSA Collective Members with substantial recovery for their alleged unpaid overtime, that they may have otherwise been unable to recover. Importantly, all FLSA Collective Members will automatically receive a Settlement Award unless they exclude themselves from the Settlement, and will not release any claims unless they do so (thereby allowing each FLSA Collective Member to decide whether to participate in the Settlement or not). Because the settlement facilitates the FLSA and is a fair and reasonable resolution of a *bona fide*

dispute, it should be approved as reasonable.

### 5.    The Proposed Notice is Reasonable

The Court must ensure that Class Members receive the best notice practicable under the circumstances of the case. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974). Procedural due process does not guarantee any particular procedure but rather requires only notice reasonably calculated "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Rule 23 (e) (1) requires that the Court "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "Notice" in this context consists of both the form and manner in which Class Members will be notified of the Settlement and the final fairness hearing. *Id.* The notice must "fairly apprise . . . prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interests." *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 423 (6th Cir. 2012) (internal quotations omitted).

Here, the proposed Notice of Proposed Class and Collective Action Settlement and Hearing Date for Court Approval ("Notice"), attached as Exhibit 1 to the Settlement, and manner of distribution negotiated and agreed upon by the Parties are "the best notice practicable." Cottrell Decl., ¶¶ 50-57; Fed. R. Civ. P. 23 (c) (2)(B). The proposed Notice fulfills the requirement of neutrality in class notices. *Id. See* Conte, NEWBERG ON CLASS ACTIONS, § 8.39 (3rd Ed. 1992). It summarizes the proceedings necessary to provide

27

context for the Settlement and summarizes the terms and conditions of the Settlement, including an explanation of how the Gross Settlement Amount will be allocated between the Plaintiffs, Class Counsel, the Settlement Administrator, and the Class Members, as applicable, in an informative, coherent and easy-to-understand manner, all in compliance with the Manual for Complex Litigation's recommendation that "the notice contain a clear, accurate description of the terms of the settlement." Cottrell Decl., ¶¶ 50-57; MANUAL FOR COMPLEX LITIGATION, Settlement Notice, § 21.312 (4th ed. 2004).

The Notice is written in plain and easily-understood language and clearly, fairly, and concisely describe the nature of the Action, the definition of the Class, the Class claims and issues, that Class Members may object and appear personally or enter an appearance through an attorney if desired, that the Court will exclude from the Class any member who requests exclusion, the binding effect of a class judgment on the Class Members and the releases, Class Counsel's contact information, the Settlement Administrator's contact information, the significant terms of the Settlement and the total amount WFX has agreed to pay the Class and the FLSA Collective, and the Court approval process, including Class Counsel's request for attorneys' fees and reasonable expenses, as well as for a service award on behalf of Plaintiff Beissel. *See* Settlement, Ex. 1; *see also,* Cottrell Decl., ¶¶ 50-57. All Class Members have been identified and the Notices will be mailed directly to each Class Member, appropriate and reasonable efforts will be made by the Settlement Administrator to update the contact information in the database and to search for any outdated addresses, and a settlement website will be available for Class Members to review all relevant settlement documents and contact information. *See*

28

Cottrell Decl., ¶¶ 50-57.

The proposed Notice thus fairly apprises Class Members of the Settlement's terms, the schedule for future events and deadlines, and their legal rights in connection with the proceedings. *See*, *e.g.*, *Gooch*, 672 F.3d at 423 ("When a class has settled its claims, '[t]he contents of a . . . notice are sufficient if they inform the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, . . . that any class member may appear and be heard at the hearing,' . . . and 'information [about] the class members' right to exclude themselves and the results of failure to do so.'" (internal citation omitted)); *Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D 262, 272 (E.D. Ky. 2009) (finding that the proposed notice – similar to the notice proposed here – satisfied the requirements of Rule 23(c)(2)(B)). Because the proposed Notice clearly and concisely describe the terms of the Settlement and the awards and obligations for Class Members who participate, and because the Settlement Administrator will disseminate the Notice in a way calculated to provide notice to as many Class Members as possible, the Notice should be approved.

### 6.    The Court Should Approve the Proposed Schedule

The Settlement contains the following proposed schedule, which Plaintiffs respectfully request this Court approve:

| Activity | Deadline |
|---|---|
| Deadline for WFX to provide Settlement Administrator with the Class List | Within 14 days after the Court's preliminary approval of the Settlement |
| Deadline for Settlement Administrator to mail the Notice of Settlement to Class Members | Within 28 days after the Court's preliminary approval of the Settlement |
| Deadline for Class Members to postmark | 60 days after the Settlement Administrator |

| Activity | Deadline |
|---|---|
| requests to opt-out or file objections to the Settlement ("Opt-Out Deadline") | mails the Notice of Settlement |
| Deadline for Settlement Administrator to provide all counsel and the Court with a final report (a) the final pro rata portion of each Class Participant and (b) the final number of Opt-Outs | Within 10 days after the Opt-Out Deadline |
| Deadline for filing of Final Approval Motion | Within 30 days of the Opt-Out Deadline |
| Deadline for Settlement Administrator to provide all Parties' counsel with a statement detailing the Settlement Administration Costs and the notice administration process | At least 7 days prior to the Court's Final Approval and Fairness Hearing |
| Final Approval and Fairness Hearing | Within 120 days after the Preliminary Approval Date |
| Effective Date | The date when all of the following events have occurred: (a) this Stipulation has been executed by all Parties and by Class Counsel and Defense Counsel; (b) the Court has given preliminary approval to the Settlement; (c) notice has been given to the Class Members providing them with an opportunity to opt-out of the Settlement; (d) the Court has held a Final Approval and Fairness Hearing and entered a final order and judgment certifying the Class and approving this Stipulation; and (e) in the event there are written objections filed prior to the Final Approval and Fairness Hearing that are not later withdrawn, the later of the following events:  when the period for filing any appeal, writ, or other appellate proceeding opposing the Settlement has elapsed without any appeal, writ or other appellate proceeding having been filed; or any appeal, writ, or other appellate proceeding opposing the Settlement has been dismissed finally and conclusively with no right to pursue further remedies or relief; or any appeal, writ, or other appellate proceeding has upheld the |

| Activity | Deadline |
|---|---|
|  | Court's final order with no right to pursue further remedies or relief. In this regard, it is the intention of the Parties that the Settlement shall not become effective until the Court's order approving the Settlement is completely final and there is no further recourse by an appellant or objector who seeks to contest the Settlement. In the event that no objections are filed, the Effective Date shall be after steps (a) through (d) have been completed. |
| Deadline for WFX to remit the Gross Settlement Amount to the Settlement Administrator | Within 7 days after Effective Date |
| Deadline for Settlement Administrator to make payments under the Settlement to Class Participants, Plaintiff for the Service Award, Class Counsel for attorneys' fees and costs, and itself for Administration Costs | Within 14 days of the Effective Date |
| Deadline for Settlement Administrator to redistribute uncashed check funds to Class Participants | As soon as practicable after the 180-day check-cashing deadline for individual settlement payments after issuance |
| Deadline for Settlement Administrator to revert uncashed check funds to *cy pres* recipient | As soon as practicable after the 180-day check-cashing deadline for redistributed checks after issuance |

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that this Court grant preliminary approval of the Settlement as to the Class and approval of the Settlement as to the FLSA Collective, in accordance with the schedule set forth herein.

//

//

Dated: January 6, 2023                              Respectfully submitted,


                                                    */s/ David C. Leimbach*
                                                    Carolyn H. Cottrell (admitted *pro hac vice*)
                                                    David C. Leimbach (admitted *pro hac vice*)
                                                    SCHNEIDER WALLACE
                                                    COTTRELL KONECKY LLP
                                                    2000 Powell Street, Suite 1400
                                                    Emeryville, California 94608
                                                    Telephone: (415) 421-7100
                                                    Facsimile:  (415) 421-7105
                                                    ccottrell@schneiderwallace.com
                                                    dleimbach@schneiderwallace.com

                                                    Robert S. Boulter (admitted *pro hac vice*)
                                                    LAW OFFICES OF ROBERT S. BOULTER
                                                    1101 Fifth Avenue, Suite 235
                                                    San Rafael, California 94901
                                                    Telephone: (415) 233-7100
                                                    Facsimile: (415) 233-7101
                                                    rsb@boulter-law.com

                                                    Attorneys for Plaintiffs, the putative Class
                                                    and Collective

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court for the for the United States District Court, Western District of Oklahoma, by using the Court's Case Management/Electronic Case Filing (CM/ECF) system, on January 6, 2023.

I hereby attest that concurrence in the content of the attached document and authorization to file the attached document has been obtained from the other signatory indicated by a conformed signature (/s/) within the attached e-filed document.

Dated: January 6, 2023                    Respectfully submitted,

<u>/s/ David C. Leimbach</u>
Carolyn H. Cottrell (admitted *pro hac vice*)
David C. Leimbach (admitted *pro hac vice*)
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
ccottrell@schneiderwallace.com
dleimbach@schneiderwallace.com