**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| ANDREW BEISSEL, an individual, J&B ENTERPRISES, INC., a Colorado Corporation, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>WESTERN FLYER EXPRESS, LLC,<br><br>    Defendant. | Case No. CIV-21-903-R |

## PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT

COME NOW, Plaintiffs Andrew Beissel and J&B Enterprises, Inc. ("Plaintiffs"), by and through their undersigned counsel, move this Court for an Order:

1.    Granting final approval of the Amended Joint Stipulation of Settlement and Release of Class and Collective Action ("Settlement"), a true and correct copy of which is attached as Exhibit 2 to the Stipulation and Joint Motion to Amend Preliminary Approval Order and to Continue Final Approval Hearing ("Stipulation to Amend") (ECF No. 87-2).[1]

2.    For settlement purposes, finally certifying the Oklahoma Class[2] and the

---

[1] The Court granted the Stipulation to Amend on May 19, 2023. *See* ECF No. 88. The original settlement agreement ("original settlement"), which the Court preliminarily approved on January 18, 2023 (*see* ECF No. 83), is attached as Exhibit A to the Declaration of Carolyn H. Cottrell in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class and Collective Action Settlement (ECF No. 81-2).

[2] Plaintiffs assert Oklahoma law claims on behalf of the Oklahoma Class. The Oklahoma Class spans truck drivers that provided transportation services for Defendant Western Flyer Express, LLC ("Defendant" or "WFX") across the country (i.e., in any state).

FLSA Collective;

3.      Finally approving Plaintiff Andrew Beissel as representative of the Oklahoma Class and the FLSA Collective for purposes of settlement;

4.      Finally approving Schneider Wallace Cottrell Konecky LLP and the Law Offices of Robert S. Boulter as Class Counsel for the Oklahoma Class and the FLSA Collective;

5.      Finally approving CPT Group as Settlement Administrator and approving the costs of administration;

6.      Finally approving Class Counsel's request for attorneys' fees and costs;

7.      Finally approving Plaintiffs' request for a service award; and

8.      Approving the schedule and procedure for implementing and administering the Settlement.

Plaintiffs bring this Motion pursuant to Federal Rule of Civil Procedure 23(e). This Motion is based on the accompanying memorandum of law, the concurrently filed Motion for Attorneys' Fees and Costs and Service Award, the accompanying Declaration of Carolyn H. Cottrell and the exhibits attached thereto; the accompanying Declaration of Robert Boulter; the accompanying Declaration of Andrew Beissel; the accompanying Declaration of William Argueta and the exhibit attached thereto; any oral argument as may be heard by the Court; and all other records, pleadings, and papers on file in this action. Pursuant to the terms of the Settlement, Defendant does not oppose this Motion.

A proposed order and proposed judgment will be submitted for the Court's consideration in advance of the Final Approval and Fairness Hearing.

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................ 1

II.    BACKGROUND ................................................................................. 2

    A.    Procedural Background ............................................................. 2

        1.    Preliminary Approval and Amendment of the Settlement ................ 3

        2.    Class Notice Process ........................................................ 4

        3.    CAFA Notice ............................................................... 5

    B.    Key Terms of the Settlement ..................................................... 6

III.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE
SETTLEMENT ................................................................................ 9

    A.    The Court Should Grant Final Approval of the Settlement as to the
Oklahoma Class ........................................................................ 9

        1.    The Settlement Is Fair, Reasonable, and Adequate......................... 11

            a.    The Settlement is the product of extensive arm's-length
negotiations between experienced counsel and assisted by an
experienced mediator. ......................................................... 11

            b.    Serious questions of law and fact exist, and the value of an
immediate recovery outweighs the mere possibility of future
relief after protracted and expensive litigation. .................... 13

            c.    The Parties agree that the Settlement is fair and reasonable,
further supporting final approval. ........................................ 15

        2.    The Court-Approved Notice Process Provide Adequate Notice
to the Class, Satisfying Due Process ................................. 17

    B.    The Court Should Finally Approve the Settlement as to the FLSA
Collective .............................................................................. 19

    C.    The Court Should Finally Approve Plaintiffs' Request for Attorneys' Fees
and Costs and the Service Award ............................................... 19

    D.    The Court Should Approve the Proposed Implementation Schedule ......... 20

IV.    CONCLUSION ............................................................................... 21

# TABLE OF AUTHORITIES

**Cases**

*Amoco Prod. Co. v. Fed. Power Comm'n*, 465 F.2d 1350 (10th Cir. 1972) ................................. 9

*Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305 (7th Cir. 1980) .................................. 9, 10

*Big O Tires, Inc. v. Bigfoot 4x4, Inc.*, 167 F.Supp.2d 1216 (D. Colo. 2001) ................................ 9

*Childs v. Unified Life Ins. Co.*, No. 10-CV-23-PJC, 2011 U.S. Dist. LEXIS 138818
(N.D. Okla. Dec. 2, 2011) ................................................................................. 15

*Gottlieb v. Wiles*, 11 F.3d 1004 (10th Cir. 1993) .......................................................... 13

*Grunin v. Int'l House of Pancakes*, 513 F.2d 114 (8th Cir. 1975) ................................. 18

*Gundrum v. Cleveland Integrity Servs.*, No. 17-CV-55-TCK-tlw, 2017 U.S. Dist.
LEXIS 130255 (N.D. Okla. Aug. 16, 2017) ............................................................. 10

*Horton v. Molina Healthcare, Inc.*, No. 17-cv-0266-CVE-JFJ, 2019 U.S. Dist. LEXIS 90377
(N.D. Okla. May 22, 2019) .................................................................................. 12

*In re Motor Fuel Temperature Sales Practices Litig.*, 258 F.R.D. 671 (D. Kan. 2009) ............... 14

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 2006 U.S. Dist. LEXIS 71039 (D. Colo. 2006) .... 14

*Johnson v. City of Tulsa*, No. 94-CV-39-H(M), 2003 U.S. Dist. LEXIS 26379
(N.D. Okla. 2003) ............................................................................................... 15

*Jones v. Nuclear Pharm., Inc.*, 741 F.2d 322 (10th Cir. 1984) ..................................... 10

*Langford v. Devitt*, 127 F.R.D. 41 (S.D.N.Y. 1989) ...................................................... 18

*Lopez v. Santa Fe*, 206 F.R.D. 285 (D.N.M. 2002) ...................................................... 17

*Lucas v. Kmart Corp.*, 234 F.R.D. 688 (D. Colo. 2006) ...................................... 11, 15, 17

*Lynn's Food Stores. Inc. v. U.S.*, 679 F.2d 1350 (11th Cir. 1982) ................................. 19

*Marcus v. Kan. Dept. of Revenue*, 209 F.Supp.2d 1179 (D. Kan. 2002) ................................ 12, 15

*McNeely v. Nat'l Mobile Health Care, LLC*, 2008 U.S. Dist. LEXIS 86741
(W.D. Okla. 2008) ............................................................................................... 14

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ............................................. 17

*Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117 (D. Colo. 2016) ................................ 19

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180 (10th Cir. 2002) ........................... 10, 11

*Sears v. Atchison, Topeka & Santa Fe Ry., Co.*, 749 F.2d 1451 (10th Cir. 1984) ....................... 9

*Sollenbarger v. Mountain States Tel. and Tel. Co.*, 121 F.R.D. 417 (D.N.M. 1988) .................. 17

*Tripp v. Rabin*, No. 14-CV-2646-DDC-GEB, 2016 U.S. Dist. LEXIS 87691, 2016
    WL 3615572 (D. Kan. July 6, 2016) ................................................................................. 10

*Trujillo v. Colo.*, 649 F.2d 823 (10th Cir. 1981) .......................................................................... 9

*Tuten v. United Airlines, Inc.*, 41 F.Supp.3d 1003 (D. Colo. May 19, 2014) ............................... 9

*Vaszlavik v. Storage Tech. Corp.*, No. 95-B-2525, 2000 U.S. Dist. LEXIS 21129
    (D. Colo. 2000) ................................................................................................................... 10

*Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273 (D. Colo. 1997) ........................... 10, 12, 13

**Other Authorities**

Manual for Complex Litigation (Third) § 21.311 ....................................................................... 18

Manual for Complex Litigation (Third) § 30.42 ......................................................................... 11

Newberg on Class Actions § 8.21 ............................................................................................... 18

**Rules**

Fed. R. Civ. P. 23(c)(2)(B) ......................................................................................................... 17

Fed. R. Civ. P. 23(e) ............................................................................................................... 9, 10

## MEMORANDUM OF LAW

### I.    INTRODUCTION

The Parties have reached an excellent global settlement of this action, memorialized in the Amended Joint Stipulation of Settlement and Release of Class and Collective Action ("Settlement") (ECF No. 87-2). The Settlement was reached after several years of intensive litigation, including considerable motion practice, a comprehensive mediation process and related discovery, and extensive arm's-length negotiations between counsel. The Settlement provides a strong result for Class and Collective, with an average <u>net</u> award of approximately $1,143 per person. The Settlement has been preliminarily approved and Plaintiffs now move for final approval.

The Settlement resolves Plaintiffs' class and collective claims under Oklahoma consumer protection laws and federal wage-and-hour law for approximately 2,728 truck drivers hauling products throughout the United States, including Oklahoma, for WFX. The Settlement provides a total non-reversionary Gross Settlement Amount[3] of $4,900,000.00. This result was achieved through months of well-informed, arm's-length negotiations among experienced and knowledgeable counsel, facilitated by an experienced private mediator. With this Settlement, the Parties are resolving thousands of claims unlikely to have been prosecuted as individual actions.

The Settlement provides considerable recoveries to the Class and Collective members.[4] 957 class members will receive net individual awards exceeding $1,000, 261

---

[3] Undefined capitalized terms have the meanings ascribed to them in the Settlement.
[4] The members of the Oklahoma Class and FLSA Collective are sometimes referred to as "class members" hereinafter for ease of reading.

class members will receive net awards exceeding $3,000, and 70 class members will receive net awards exceeding $5,000.[5] Moreover, WFX will release any right to pursue monetary claims against class members for outstanding debts, reimbursements, chargebacks, deposits, or other amounts. Not surprisingly, the reaction of the class members has been favorable, with zero opt-outs and a single objection (ECF No. 91) that raised an unrelated issue.

The Settlement provides a strong, efficient outcome in the face of expanding and risky litigation. The Settlement is fair, reasonable, and adequate in all respects, and Plaintiffs respectfully submit that the Court should now grant final approval.

## II.    BACKGROUND

### A.    Procedural Background

The procedural background of this action is detailed in the Background section of the Unopposed Motion for Preliminary Approval of Class and Collective Action Settlement (ECF No. 81) and the Summary of Work Performed section in the Memorandum of Law in Support of Plaintiffs' Motion for Attorneys' Fees and Costs and Service Award, filed concurrently filed herewith. For simplicity, Plaintiffs incorporate those documents by reference and provide further background regarding preliminary approval and the class notice process in this section.

---

[5] The average recovery and individual recovery amounts reported herein are based on the amounts reported to the class members in the class notice process. These amounts assumed that Class Counsel would be awarded $100,000 for reimbursement of out-of-pocket costs under the Settlement. However, Class Counsel's final costs are considerably less than $100,000. Accordingly, the final amounts that will be paid to class members will be slightly higher than those reported in the notice and set forth herein.

### 1. Preliminary Approval and Amendment of the Settlement

The Court granted preliminary approval of the Settlement on January 18, 2023. *See* ECF No. 83. Following the Court's preliminary approval order, WFX provided class list information to the Court-appointed settlement administrator, CPT Group, Inc. ("CPT"). CPT then undertook calculations to determine the individual awards for each class member. Declaration of Carolyn H. Cottrell in Support of Plaintiffs' Motion for Final Approval of Class and Collective Action Settlement and Motion for Attorneys' Fees and Costs and Service Award ("Cottrell Decl."), ¶ 19.

During this process, the Parties discerned that the number of class members, under the Class and Collective definitions in the original settlement, exceeded the number reported by Plaintiffs in the preliminary approval papers. *Id*., ¶ 20. Plaintiffs reported that there were approximately 2,760 class members based on information and data used by the Parties at the July 2022 mediation. *See* ECF Nos. 81, 87. After preliminary approval, Plaintiffs learned that this figure encompassed class members up to March 11, 2021, when WFX represents it made certain changes to its written agreements with class members. *See* ECF No. 87. Under the original settlement, however, that the Class and Collective definitions extended through July 19, 2022. *See* ECF Nos. 81-2, 87.

Accordingly, the Parties met and conferred and reached an agreement under which the Class and Collective definitions were redefined to run from December 7, 2017 to March 11, 2021. *See* ECF Nos. 87. The Parties then executed the amended settlement agreement to implement these changes. Cottrell Decl., ¶ 21.The Parties filed the Stipulation to Amend, which sought to amend the preliminary approval order as to the time period of the Class

3

and Collective definitions and Released Claims and attached the Settlement (as amended) in clean and redline formats. ECF No. 87. The Court granted the Stipulation to Amend on May 19, 2023. *See* ECF No. 88.

### 2. Class Notice Process

The Parties then worked with CPT to implement the Court-approved notice process. WFX provided updated class list information to CPT on June 2, 2023. *See* Declaration of William Argueta with Respect to Settlement Administration and Class Notice ("CPT Decl."), ¶ 5. CPT sent the Notice of Proposed Class Action Settlement and Hearing Date for Final Court Approval and Class Form ("Class Notice") to all class members on August 8, 2023.[6] *Id*., ¶ 7. CPT also established a toll-free call center to address questions from class members and a settlement website that provided copies of the long-form Settlement and related case documents.[7] *Id*., ¶ 2.

Prior to mailing the Class Notice, CPT conducted a National Change of Address (NCOA) search to update the class member addresses as accurately as possible. *Id*., ¶ 6. After mailing, 491 notice packets were returned as undeliverable to CPT and 23 were forwarded directly by the U.S. Postal Service to a forwarding address. *Id*., ¶ 8. CPT performed a skip trace on all returned mail that was returned with no forwarding address in an attempt to locate a better address and remailed 444 notice packets. *Id*., ¶ 9. Ultimately, just 56 notice packets remain undeliverable. *Id*., ¶ 10.

The deadline for class members to submit disputes, requests for exclusion, or

---

[6] There are 2,728 class members in the final tally. *Id*., ¶¶ 5, 7.
[7] The URL is https://www.cptgroupcaseinfo.com/westernflyersettlement.

objections was October 7, 2023. *Id*., ¶ 7. Class members were able to dispute the number of workweeks that they were credited under the Settlement, upon which their Individual Settlement Amounts were based. CPT received one dispute from a class member wishing to dispute his workweeks, which was ultimately denied when the disputed information was checked against WFX's records. *Id*., ¶ 12. CPT did not receive any requests for exclusion. *Id*., ¶ 10.

A single class member filed an objection on an unrelated issue. *See* ECF No. 91. In this short, handwritten objection, class member Earl Appleberry states that his workers' compensation claim against WFX was ultimately denied on appeal and his attorney did not timely file an appeal to the higher court. Based on his statements, Mr. Appleberry ostensibly may have a malpractice claim against a workers' compensation attorney, but such a claim is unaffected by the Released Claims as defined under the Settlement. *See* ECF No. 87-2, pp. 6-7, ¶ I.16. Mr. Appleberry's objection does not raise any discernible arguments against the Settlement and should be overruled.

Given that there are no opt-outs, one dispute, and a single objection that raises an unrelated issue, the reaction of the class members has been overwhelmingly positive.

### 3.  CAFA Notice

WFX served notice pursuant to the requirements of the Class Action Fairness Act, 28 U.S.C. §§ 1715 *et seq.* ("CAFA"), which requires that "appropriate state and federal officials" be notified of a pending class-action settlement in federal court. WFX issued the requisite CAFA notices on January 27, 2023. Cottrell Decl., ¶ 26.

**B.**    **Key Terms of the Settlement**

Under the Settlement, WFX will pay a non-reversionary Gross Settlement Amount of $4,900,000.00 to resolve this litigation. This amount includes all payments to the class members; proposed attorneys' fees and costs; the proposed service award; the costs of settlement administration ($21,500.00); and any other obligation of WFX under the Settlement. *See* ECF No. 87-2, pp. 10-11, ¶ III.1. The Net Settlement Amount (the amount distributed to class members) is approximately $3,214,458.45.[8] Cottrell Decl., ¶ 29; ECF No. 87-2, p. 6.

The entire Gross Settlement Amount will be disbursed pursuant to the terms of the Settlement, and <u>none</u> of it will revert to WFX. Other key terms of the Settlement include:

- **<u>Oklahoma Class</u>**: A portion of the Net Settlement Amount will be distributed to Oklahoma Class Members, who are defined as "All current and former individuals who provide(d) transportation services for WFX within the United States, who entered into an Independent Contractor Agreement, or a similarly styled agreement, with WFX, from December 7, 2017 to March 11, 2021." ECF No. 87-2, p. 2, ¶ I.5.

- **<u>FLSA Collective Members</u>**: A portion of the Net Settlement Amount will be distributed to FLSA Collective Members, who are defined as "all current and former individuals who provided transportation services for WFX within the United States, between December 7, 2017 and March 11, 2021, who (1) entered into an Independent Contractor agreement with WFX (2) were classified as independent contractors, and (3) sign or cash the settlement check(s) they receive as a result of this settlement."[9] *Id.* at p. 4.

---

[8] The Net Settlement Amount was reported at approximately $3,120,330.00 in the preliminary approval motion. This figure was based on estimated attorneys' costs of $100,000. Class Counsel's final costs ($5,871.55) are considerably less than $100,000, resulting in a higher final Net Settlement Amount.

[9] All Drivers covered by the Settlement are members of both the Oklahoma Class and the FLSA Collective (provided that they cash their settlement check). Thus, each class member will receive a share of the Oklahoma Class allocation and the FLSA allocation as part of their Individual Settlement Amount.

- **Class Participants' Released Claims**: Class Participants (i.e., class members that do not opt out) will release all claims, whether known or unknown, which arose out of, are in any way connected to, or that were made or could have been made based on facts, theories, and claims pled in the Complaint, Amended Complaint, or Second Amended Complaint, from December 7, 2017 to December 31, 2021. *Id.* at pp. 6-7, 29-30, ¶ X.1. The Released Claims include, but are not limited to, all wage and hour claims under the FLSA, 29 U.S.C. §§ 201, *et seq.*, that were alleged, inferred, pled or could have been pled based on the factual allegations in the Second Amended Complaint; all claims for the unlawful sale of business opportunities under the Oklahoma Business Opportunity Sales Act, 71 Okla. Stat. §§ 801, *et seq.*; all claims for deceptive and unfair trade practices under the Oklahoma Consumer Protection Act, 15 Okla. Stat. §§ 752, *et seq.*; all claims for deceptive trade practices under the Oklahoma Deceptive Trade Practices Act, 78 Okla. Stat. §§ 52, *et seq.*; all claims for constructive fraud, fraud, misrepresentation, and negligent misrepresentation; and all claims under Title 18 of U.S. Code Section 1581 *et seq.* pertaining to debt servitude and/or peonage and involuntary servitude. *See id.*

- **Plaintiffs' Released Claims**: In exchange for the Service Award, Plaintiffs will release all claims which they may have had prior to the Effective Date against Defendant arising out of or in any way connected with their alleged employment with Defendant, their contracts with Defendant, including claims alleged in the original complaint, and any and all transactions, occurrences, or matters between the Parties occurring before January 18, 2023. *Id.* at pp. 30-31, ¶ X.2.

- **WFX's Released Claims**: Subject to Court approval, WFX will release Class Participants from all known or unknown monetary claims for outstanding debts, reimbursements, chargebacks, deposits, or other amounts. *Id.* at p. 31, ¶ X.3. This provides considerable equitable relief for class members.

- **Released Parties**: The Released Claims will apply to the Released Parties, including WFX and its present and former parent or holding companies, subsidiaries, divisions, affiliates of all kinds and degrees, successors, predecessors, related companies or joint ventures, and each of their present and former officers, directors, shareholders, agents, employees, insurers, attorneys, accountants, auditors, advisors, representatives, consultants, administrators, trustees, general and limited partners, predecessors, successors and assigns. *Id.* at p. 7.

- ***Pro Rata* Distribution**: Each Class Participant will receive a *pro rata* portion of the Net Settlement Amount based on the number of settlement shares he or she is assigned. *See* ECF No. 87-2, pp. 23-24, ¶¶ VII.2-3. Settlement Shares are

based on the number of workweeks the individual worked compared to the total number of workweeks all Class Participants worked. *Id.* Class Participants will receive one settlement share per FLSA Workweek and two settlement shares per Oklahoma Workweek. *Id.* The total number of settlement shares for all Class Participants will be added together and the resulting sum will be divided into the Net Settlement Amount to reach a per share dollar figure. *Id.* That figure will then be multiplied by each Class Participant's number of settlement shares to determine the Class Participant's *pro rata* portion of the Net Settlement Amount. *Id.*

- **Tax Allocation**: The Settlement provides that the Individual Settlement Amount payments to Class Participants will be reported on an IRS Form 1099. *Id.* at pp. 11-12, ¶ III.4.

- **Service Award**: The Settlement provides that Plaintiffs will seek a service payment to Named Plaintiff Andrew Beissel in the amount of $25,000.00 (subject to Court approval) to compensate him for his time and effort in service of the Class, as well as in exchange for a general release. *Id.* at pp. 7, 11, ¶¶ III.2. The proposed service award in the amount of $25,000 for Plaintiffs represents 0.51% of the Gross Settlement Amount.

- **Attorneys' Fees and Costs**: Class Counsel's attorneys' fees and litigation expenses are included in the Gross Settlement Amount. *Id.* at pp. 12-13, ¶ IV.1. The Settlement provides that WFX does not oppose a fee application of up 33.33% of the Gross Settlement Amount plus reasonable out-of-pocket costs. *Id.* Plaintiffs seek attorneys' fees in the amount of $1,633,170.00 and costs in the amount of $5,871.55. Cottrell Decl., ¶ 31.

- ***Cy Pres***: Any funds still remaining after the 180-day check cashing period will be redistributed to Class Participants on a prorated basis, and any additional settlement administration costs related to the redistribution will be deducted from the total amount of uncashed funds prior to redistribution. ECF No. 87-2, p. 27, ¶ VII.8. Following this redistribution, any remaining funds will be paid via *cy pres* in equal portions to: (1) St. Christopher Truckers Relief Fund, (2) Meals for 18 Wheels, and (3) Truckers Final Mile, the Parties' agreed-upon *cy pres* beneficiaries. *Id.* These organizations bear a substantial nexus to the interests of the Class Members, as they are all committed to supporting and aiding truck drivers. Cottrell Decl., ¶ 31.

### III.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

#### A.    The Court Should Grant Final Approval of the Settlement as to the Oklahoma Class

Courts strongly favor settlement as a method for resolving disputes. *See Amoco Prod. Co. v. Fed. Power Comm'n*, 465 F.2d 1350, 1354 (10th Cir. 1972); *see also Sears v. Atchison, Topeka & Santa Fe Ry., Co.*, 749 F.2d 1451, 1455 (10th Cir. 1984); *Trujillo v. Colo.*, 649 F.2d 823, 826 (10th Cir. 1981) (citing "important public policy concerns that support voluntary settlements"). This is especially true in complex class actions like this case. *See Big O Tires, Inc. v. Bigfoot 4x4, Inc.*, 167 F.Supp.2d 1216, 1229 (D. Colo. 2001). "[The] presumption in favor of voluntary settlement agreements is especially strong in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Tuten v. United Airlines, Inc.*, 41 F.Supp.3d 1003, 1007 (D. Colo. May 19, 2014); *see also Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980) ("In the class action context in particular, there is an overriding public interest in favor of settlement. . . .").

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise of claims brought on a class-wide basis. Under that Rule, approval of a class action settlement is a two-step process. Fed. R. Civ. P. 23(e). During the first step, which has already occurred here, the Court conditionally certified the Oklahoma Class, preliminarily approved the Settlement, and authorized that notice be given to the Class so that interested class members could have the opportunity to object to the fairness of the settlement or opt out of the settlement. *See Gundrum v. Cleveland Integrity Servs.*, No. 17-CV-55-TCK-tlw,

2017 U.S. Dist. LEXIS 130255, at *13 (N.D. Okla. Aug. 16, 2017); *Tripp v. Rabin*, No. 14-CV-2646-DDC-GEB, 2016 U.S. Dist. LEXIS 87691, 2016 WL 3615572, at *2 (D. Kan. July 6, 2016). In the second step, after notice has been sent, the Court holds a final approval hearing to address any objections and decide whether to grant final approval. *Armstrong*, 616 F.2d at 314.

To grant final approval, the Court must conclude that the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e); *see also Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002), cert. denied, 539 U.S. 915 (2003); *Vaszlavik v. Storage Tech. Corp.*, No. 95-B-2525, 2000 U.S. Dist. LEXIS 21129, at *2, *4 (D. Colo. 2000) (citing *Jones v. Nuclear Pharm., Inc.*, 741 F.2d 322, 324 (10th Cir. 1984)). "Importantly, in evaluating the fairness of the settlement, courts are not to decide the merits of the case or resolve unsettled legal questions.*" Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284 (D. Colo. 1997). "This is because the essence of settlement is compromise, and settlements are generally favored." *Id.*

Plaintiffs now ask this Court to take the final step in the review process and finally approve the Oklahoma Class for settlement. Given the complexity of this litigation and the potential and continued risks if the Parties were to proceed with class certification, trial, and appeal, the Settlement represents a favorable resolution of this action and eliminates the risk that the Class might otherwise recover nothing. The Settlement is fair, reasonable, and adequate, and thus warrants this Court's final approval.

## 1.  The Settlement Is Fair, Reasonable, and Adequate

The Tenth Circuit has identified four factors to determine whether a settlement is fair, reasonable, and adequate, all of which are satisfied here: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Rutter*, 314 F.3d at 1188; *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006). As demonstrated below, the Settlement satisfies each of these criteria and thus warrants this Court's final approval.

### a.  The Settlement is the product of extensive arm's-length negotiations between experienced counsel and assisted by an experienced mediator.

Where, as here, a settlement results from "arm's length negotiations between experienced counsel after significant discovery [has] occurred, the Court may presume the settlement to be fair, adequate, and reasonable." *Lucas*, 234 F.R.D. at 693; *see also* Manual for Complex Litigation (Third) § 30.42, at 238. This action has been litigated for approximately three years. During this time, Class Counsel has conducted substantial motion practice, obtained extensive informal discovery, performed investigations into WFX's recruiting practices, interviewed Drivers, and performed legal research regarding the laws applicable to the claims and defenses at issue. Cottrell Decl., ¶ 42.

Following dispositive motion practice on the pleadings, the Parties began settlement discussions and negotiations, which were conducted at arm's length and with the assistance

of a highly experienced mediator, Michael Russell. *Id*. at ¶ 43. The negotiation process was hard-fought and protracted over months *Id*. Plaintiffs submitted a comprehensive mediation statement and performed a comprehensive damages estimate, which were thoroughly prepared by Class Counsel and based on substantial informal discovery, documents, data, research, and investigations. *Id*.

Courts in this Circuit have found settlements fairly and honestly negotiated where, as is the case here, "[t]he completeness and intensity of the mediation process, coupled with the quality and reputations of the mediator, demonstrate a commitment by the [p]arties to a reasoned process for conflict resolution that took into account the strengths and weaknesses of their respective cases and the inherent vagaries of litigation." *Wilkerson*, 171 F.R.D. at 285; *see also Horton v. Molina Healthcare, Inc.*, No. 17-cv-0266-CVE-JFJ, 2019 U.S. Dist. LEXIS 90377, at *2–3 (N.D. Okla. May 22, 2019) (finding a proposed class-action settlement agreement fair and reasonable because, among other things, it was "negotiated in good faith at arms' length between experienced attorneys familiar with the legal and factual issues of this case aided by an experienced and neutral third-party mediator"); *Ashley*, 2008 U.S. Dist. LEXIS 13069 at *16–17 (settlement fairly and honestly negotiated where the parties engaged in formal settlement mediation conference and negotiations over four months); *Marcus v. Kan. Dept. of Revenue*, 209 F.Supp.2d 1179, 1182 (D. Kan. 2002) ("When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable.").

The Parties zealously advocated their respective positions throughout the settlement process. The Settlement is a product of serious, informed, and non-collusive negotiations among experienced counsel and an experienced private mediator, and warrants final approval.

> **b. Serious questions of law and fact exist, and the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation.**

Numerous, serious questions of law and fact exist in this action, all of which are the subject of considerable risk if this case were to continue to be litigated.[10] Cottrell Decl., ¶ 45. For example, while Plaintiffs believe WFX misclassified its drivers, it cannot be denied that plaintiffs rarely succeed in prosecuting independent contractor misclassification cases under the FLSA – both as to certification and merits issues. And of course, even if Plaintiffs were to succeed on those fronts, misclassification is not inherently unlawful – wage-and-hour violations would still have to be proven. Because the FLSA exempts Class Members from overtime requirements and allows paid and unpaid time to be averaged together for minimum wage purposes, it is exceedingly difficult to prove damages, even if misclassification claims are both certified and proven on the merits. *Id.*

Similarly, while Plaintiffs are confident in their ability to certify and prove claims under Oklahoma consumer protection statutes, the fact of the matter is these theories of liability are relatively new, and different Courts may come to different conclusions. *Id.* at

---

[10] *See Wilkerson*, 171 F.R.D. at 285 (citing *Gottlieb v. Wiles*, 11 F.3d 1004, 1015 (10th Cir. 1993)) (The value of an immediate recovery, the "monetary worth of the settlement," is "to be weighed not against the net worth of the defendant, but against the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation.").

¶ 46. Indeed, it is notoriously difficult to certify nationwide classes who would assert claims based on misrepresentations, because different class members often receive different (even if subtly) representations. *Id.*

These are serious questions of law and fact that create great uncertainty in the class members' ability to recover anything. "The presence of such doubt tips the balance in favor of settlement because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation." *McNeely v. Nat'l Mobile Health Care, LLC*, 2008 U.S. Dist. LEXIS 86741, at *31–41 (W.D. Okla. 2008) (citing *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 2006 U.S. Dist. LEXIS 71039, at *16–18 (D. Colo. 2006)).

Moreover, the complexity, uncertainty, additional expense, and likely duration of further litigation also favor final approval of the Settlement. *See In re Motor Fuel Temperature Sales Practices Litig.*, 258 F.R.D. 671, 681 (D. Kan. 2009) (granting preliminary approval because, among other things, "[t]he costs of continued litigation are high, and it is possible that plaintiffs could receive little or no pecuniary relief"); *Ashley*, 2008 U.S. Dist. LEXIS 13069, at *15–22. "The class will be well compensated, relatively speaking, and is better off receiving compensation now as opposed to being compensated, if at all, several years down the line, after the matter is certified, tried, and all appeals are exhausted." *McNeely*, 2008 U.S. Dist. LEXIS 86741, at *31-41.

This Settlement represents not only a meaningful, immediate recovery for the Class, but also one without any risk or additional expenses of further litigation. Cottrell Decl., ¶ 48. This benefit must be considered in light of the risk that the Class may recover nothing

after certification proceedings, summary adjudication, appeals, contested trial, and most likely, further appeals, many years into the future, or that litigation would deplete funds available to satisfy a judgment. *See id.* These factors thus support final approval of the Settlement.

### c. The Parties agree that the Settlement is fair and reasonable, further supporting final approval.

"Counsel['s] judgment as to the fairness of the agreement is entitled to considerable weight." *Childs v. Unified Life Ins. Co.*, No. 10-CV-23-PJC, 2011 U.S. Dist. LEXIS 138818, at *37 (N.D. Okla. Dec. 2, 2011) (quoting *Lucas*, 234 F.R.D. at 695 and *Marcus*, 209 F.Supp.2d at 1183). "In addition to considering the judgment of the parties with respect to the proposed settlement, the Court should also 'defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.'" *Johnson v. City of Tulsa*, No. 94-CV-39-H(M), 2003 U.S. Dist. LEXIS 26379, at *39 (N.D. Okla. 2003).

Here, Class Counsel and WFX's counsel – law firms with great experience in complex class litigation, particularly in truck driver misclassification cases – have agreed to settle this action after serious arm's-length negotiations, extensive exchange of discovery, and many months of discussions. Cottrell Decl., ¶¶ 5-7, 49; Declaration of Robert Boulter in Support of Plaintiffs' Motion for Approval of Class Action Settlement ("Boulter Decl."), ¶ 5. Class Counsel believes that the settlement amount is fair and reasonable in light of their extensive investigation, motion practice, the risks of continued litigation, and their overall experience. Cottrell Decl., ¶ 50; Boulter Decl., ¶ 8. Plaintiffs and Class Counsel further recognize the great expense and length of proceedings necessary

to continue this litigation against WFX through formal discovery, certification, summary judgment, trial, and inevitable appeals. *Id.*

Based on Class Counsel's estimates, the Gross Settlement Amount of $4,900,000.00 represents a significant portion of the total calculated exposure at trial. *Id.* at ¶ 51. There are myriad ways to calculate economic damages in these types of cases, and all of them would have been the subject of substantial and costly economic expert discovery. *Id.* It is far from certain that the economic measure of damages for Plaintiffs' claims if they were to go to a jury (assuming the Class claims were certified and remained so) would have reflected Plaintiffs' "best case scenario." *Id.* Nevertheless, Class Counsel estimates that WFX's maximum potential exposure is no more than $31,000,000.00. *Id.* at ¶ 52. In other words, even on Plaintiffs' best day at trial, this settlement – at this early stage – represents over 15% of the calculated exposure at trial. *Id.*

Importantly, when comparing the settlement in this case to settlements in virtually identical cases that have been approved, it is clear that the settlement in this case is much more than reasonable and adequate: it is exceptional. Here, there are 2,728 Class Members, who will receive an average gross recovery of approximately $1,796 per Class Member. Cottrell Decl., ¶ 54. This amount exceeds the per-class-member recovery obtained in *Huddleston v. John Christner Trucking, LLC*, a case that was litigated for six years and included dozens of motions, a successfully certified class and collective, and a subsequent appeal. *See Huddleston v. John Christner Trucking, LLC*, Case No. 4:17-cv-00549-GKF-FHM in the United States District Court for the Northern District of Oklahoma (settled for $9,250,000.00 on behalf of 5,647 drivers, for a recovery of $1,638 per class member). That

Plaintiffs were able to obtain a greater per-class-member recovery in this case than was obtained in the hard-fought *Huddleston* litigation confirms the settlement in this case is more than adequate.

Given the risks, delays, and uncertainty inherent in continued litigation, Plaintiffs and Class Counsel believe that the Settlement is fair and reasonable to avoid the cost and uncertainty of continuing litigation. *Id.* at ¶ 56. The Settlement was further endorsed by mediator, Michael Russell. Overall, this factor thus supports the Court's final approval of the proposed Settlement. *See Lopez v. Santa Fe*, 206 F.R.D. 285, 292 (D.N.M. 2002) ("[The] trial court is entitled to rely upon the judgment of experienced counsel for the parties … Indeed, the trial judge, absent fraud, collusion, or the like, should hesitate to substitute its own judgment for that of counsel.").

### 2. The Court-Approved Notice Process Provide Adequate Notice to the Class, Satisfying Due Process

The United States Supreme Court has held that notice of a class-action settlement must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "The hallmark of the notice inquiry … is reasonableness." *Lucas*, 234 F.R.D. at 693-96 (quoting *Sollenbarger v. Mountain States Tel. and Tel. Co.*, 121 F.R.D. 417, 436 (D.N.M. 1988)).

Here, the Class Notice and manner of distribution negotiated and agreed upon by the Parties was "the best notice practicable," as required under Federal Rule of Civil Procedure 23(c)(2)(B). Pursuant to the Court's preliminary approval order, CPT sent the

Court-approved Class Notice in accordance with the terms of the Settlement. *See* CPT Decl., ¶¶ 2-7; *see also* ECF No. 87-2, pp. 15-18, ¶¶ VI.1–VI.2.

The Class Notice (attached as Exhibit A to the CPT Decl.) fully disclosed to class members the terms of the Settlement, setting forth, among other things, the amount and breakdown of the Gross Settlement Amount, the nature of the litigation, the definition of the Class and relevant claims and issues, the rights of class members, directions on how to request exclusion from or object to the Settlement, the contact information for Class Counsel and Defendant's counsel, and the date, time, and place of the Final Approval and Fairness Hearing. The Class Notice (inclusive of the attached Class Form) also provided reasonable estimates of class members' recovery. The Class Notice thus complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. Newberg on Class Actions at §§ 8.21 and 8.39; Manual for Complex Litigation (Third) at § 21.311 and 21.312.

CPT followed all of the procedures set forth in the Court-approved notice plan. Reasonable steps have been taken to ensure that all class members received the Class Notice. *See supra*, § II.2. The Class Notices were sent via first-class United States Mail to the Class Members' last-known addresses. Sending individual notices to settlement Class Members' last-known addresses constitutes the requisite effort. *See, e.g., Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975); *Langford v. Devitt*, 127 F.R.D. 41, 45 (S.D.N.Y. 1989) ("[N]otice mailed by first class mail has been approved repeatedly as sufficient notice of a proposed settlement.").

Ultimately, of the 2,728 notices distributed via first-class U.S. Mail, approximately

56 notices (2.05%) were undeliverable following skip-tracing and other techniques. *See* CPT Decl., ¶ 9. Moreover, the settlement website and toll-free call center, in addition to notice via U.S. Mail, increased the opportunities for class members to obtain information about the Settlement. *See id.* at ¶ 2. With these measures, the notice process satisfies the "best practicable notice" standard.

**B.    The Court Should Finally Approve the Settlement as to the FLSA Collective**

The standard for approval of an action arising under the FLSA requires only a determination that the proposed settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 125–27 (D. Colo. 2016) (citing *Lynn's Food Stores. Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982)). For the reasons discussed above and in Plaintiffs' Unopposed Motion for Preliminary Approval of Class and Collective Action Settlement, the Settlement falls well within the range of approval, as it is a fair and reasonable compromise of a *bona fide* dispute. *See* ECF No. 81, pp. 33–36. Pursuant to the Court's preliminary approval order, this Court already granted approval of the Settlement as to the FLSA Collective Members. ECF No. 83, ¶¶ 5–6. The Court should confirm its approval of the Settlement as a fair and reasonable resolution of a *bona fide* dispute.

**C.    The Court Should Finally Approve Plaintiffs' Request for Attorneys' Fees and Costs and the Service Award**

Concurrently with this Motion, Plaintiffs have filed their Motion for Attorneys' Fees and Costs and a Service Award. No class member has objected to the requested fees, costs, and service award. In addition to the reasons stated in Plaintiffs' Motion for Attorneys'

Fees and Costs and a Service Award, the lack of applicable objections by class members further supports: (1) awarding Class Counsel $1,633,170.00 in reasonable attorneys' fees (33.33% of the Gross Settlement Amount); (2) awarding Class Counsel its reasonable out-of-pocket costs in the amount of $5,871.55; and (3) awarding Plaintiffs a service award in the amount of $25,000.00 for their efforts in bringing and prosecuting this action and obtaining an excellent monetary result for thousands of drivers across the country.

**D.    The Court Should Approve the Proposed Implementation Schedule**

The Settlement contains the following proposed schedule, which Plaintiffs respectfully request the Court approve:

| Activity | Deadline |
| --- | --- |
| Effective Date | The date when all of the following events have occurred: (a) the Settlement has been executed by all Parties and by Class Counsel and Defense Counsel; (b) the Court has given preliminary approval to the Settlement; (c) the Class Notice has been disseminated to the Class Members, providing them with an opportunity to opt-out of the Settlement; (d) the Court has held the Final Approval and Fairness Hearing and entered a final order and judgment certifying the Class and approving the Settlement; and (e) in the event there are written objections filed prior to the Final Approval and Fairness Hearing that are not later withdrawn, the later of the following events: when the period for filing any appeal, writ, or other appellate proceeding opposing the Settlement has elapsed without any appeal, writ or other appellate proceeding having been filed; or any appeal, writ, or other appellate |

|  | proceeding opposing the Settlement has been dismissed finally and conclusively with no right to pursue further remedies or relief; or any appeal, writ, or other appellate proceeding has upheld the Court's final order with no right to pursue further remedies or relief. |
| Deadline for WFX to remit the Gross Settlement Amount to CPT | Within 7 days after the Effective Date |
| Deadline for CPT to make payments under the Settlement to Class Participants, Plaintiffs for the Service Award, Class Counsel for attorneys' fees and costs, and itself for Administration Costs | Within 14 days after the Effective Date |
| Deadline for CPT to redistribute uncashed check funds to Class Participants | As soon as practicable after the 180-day check-cashing deadline for individual settlement payments |
| Deadline for CPT to revert uncashed check funds to *cy pres* recipients | As soon as practicable after the check-cashing deadline for redistribution checks |

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the Settlement in accordance with the schedule set forth herein.

Dated: October 13, 2023                    Respectfully submitted,


                                           */s/ David C. Leimbach*
                                           Carolyn H. Cottrell (admitted *pro hac vice*)
                                           David C. Leimbach (admitted *pro hac vice*)
                                           SCHNEIDER WALLACE
                                           COTTRELL KONECKY LLP
                                           2000 Powell Street, Suite 1400
                                           Emeryville, California 94608
                                           Telephone: (415) 421-7100
                                           Facsimile:  (415) 421-7105
                                           ccottrell@schneiderwallace.com
                                           dleimbach@schneiderwallace.com

Robert S. Boulter (admitted *pro hac vice*)
LAW OFFICES OF ROBERT S. BOULTER
1101 Fifth Avenue, Suite 235
San Rafael, California 94901
Telephone: (415) 233-7100
Facsimile: (415) 233-7101
rsb@boulter-law.com

*Attorneys for Plaintiffs, the Class, and the
Collective*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I electronically filed the foregoing and attached documents with the Clerk of the Court for the for the United States District Court, Western District of Oklahoma, by using the Court's Case Management/Electronic Case Filing (CM/ECF) system, on October 13, 2023. Electronic service will be accomplished on all Parties via the CM/ECF system.

I hereby attest that authorization to file the attached declarations has been obtained from the signatories indicated by a conformed signature (/s/) within those documents.

Dated: October 13, 2023             */s/ David C. Leimbach*
                                    David C. Leimbach